**Affirmed and Memorandum Opinion filed August 7, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00301-CV

## IN THE INTEREST OF C.N.S AND C.D.S., CHILDREN

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2013-00564J**

## M E M O R A N D U M   O P I N I O N

Appellant, J.H.C. (the Father), appeals from the decree terminating his parental rights to two children, C.N.S. and C.D.S. (the Children).[1] The Father raises four issues challenging the trial court's findings on the two predicate termination grounds, that termination of the Father's parental rights is in the Children's best interest, and the appointment of the Texas Department of Family and Protective Services (the Department) as sole managing conservator of the Children. We affirm.

---

[1] To protect the identities of the minors, we have not used the actual names of the Children or family members. *See* Tex. R. App. P. 9.8. C.S. (the Mother) has not appealed the termination of her parental rights.

# I. BACKGROUND

On January 29, 2013, the Texas Department of Family and Protective Services (the Department) filed suit for protection of C.N.S. (the Baby), who was then six days old. The Department had received a referral alleging that both the Mother and the Baby tested positive for marijuana and cocaine when the Baby was born five weeks early. According to the Department's affidavit, the Mother admitted using drugs throughout her pregnancy. The Mother also acknowledged that she had an open CPS case involving her other two children, J.A.C., Jr. (Junior) and C.D.S. (Cheryl). The Department's records show that in January 2012, it received a referral alleging a family friend had physically abused Cheryl, who was born in September 2011. During the investigation, the Mother admitted using cocaine and marijuana. The Father, who is not married to the Mother, moved out of the home, taking Junior and Cheryl with him. The older children remained with the Father and the family was provided Family Based Safety Services (FBSS) during the following year.

At the adversary hearing in the suit for protection of the Baby held February 7, 2013, the Mother agreed for the Department to be named temporary managing conservator of the Baby. The Father was served with citation on February 7, 2013, and appeared at the hearing. In addition to ordering drug and alcohol screening, the trial court ordered DNA testing to confirm the Father's parentage of the Baby. The Father's drug test was positive for cocaine in his system. The DNA test results established that the Father is the Baby's biological father.

A status hearing was held on March 26, 2013, but the Father did not appear. At that time, the Father was "working services" through FBSS as a result of the earlier referral alleging Cheryl had been abused. The Department also filed new family service plans for the parents. After confirming that the Father had been served with citation in this suit, the court signed a Status Hearing Order approving

the plans and incorporating them as part of its order. The court was advised that the Father had recently tested positive for cocaine in his system. As a result, the court directed the Department to immediately investigate to determine whether Cheryl and Junior, who resided with the Father, were safe.

Based on the Father's positive drug test, on March 27, 2013, the Department amended its petition to additionally seek protection of the older children, Junior and Cheryl. A second citation for the Father was issued March 27, 2013. The Father was served again on April 4, 2013, and he appeared at the adversary hearing on April 9, 2013. At the April hearing, the Department was named temporary managing conservator of Junior and Cheryl. The court also ordered additional drug testing and further DNA testing to determine the Father's parentage of the older children. The Father's drug screen results were positive for cocaine, and DNA testing established that he is not Junior's biological parent.[2] The Father appeared at the permanency hearing held on June 25, 2014. The court ordered further drug testing and again approved and adopted the parents' family service plans. The Father's drug screens were negative at that time. Both the Father and his appointed counsel appeared at the permanency hearing held October 3, 2013. The results of drug testing of the Father ordered at the October hearing were positive for cocaine and a mixture of cocaine and alcohol.

Trial to the court was held January 23, 2014, and March 27, 2014. At trial Bruce Jefferies, of the National Screening Center, first provided expert testimony about the Father's positive drug tests. The current Department caseworker assigned to this case, Erika Gomez, testified about the Children's status and the Father's interaction with the Department during the pendency of the case. Stephanie Hicks

---

[2] After it was determined that the Father is not Junior's parent, the Department amended its suit to include an alleged or unknown father. The record reflects the alleged father refused DNA testing, did not participate at trial, and any parental rights he had to Junior were terminated.

from Child Advocates, who was appointed guardian ad litem for the Children, testified about her observations. The Father also testified at trial. In addition, the last witness to testify was Amanda, one of the Father's first cousins.

At the close of trial, the court granted the Department's request to terminate the Father's parental rights to the Children. The trial court signed a decree of termination on April 1, 2014, and the judgment recited that the Father's parental rights were terminated based on findings that termination is in the Children's best interest and that the Father committed acts establishing the predicate termination grounds set out in subsections E and O of Texas Family Code Section 161.001(1). Tex. Fam. Code §§161.001(1)(E) & (O); 161.001(2). The Department was appointed sole managing conservator of the Children. The Father filed a timely notice of appeal.

## II. BURDEN OF PROOF AND STANDARDS OF REVIEW

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of

4

the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Only one predicate finding under section 161.001 is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 244; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all of the evidence including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact

finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003) (explaining that in a termination case, an appellate court should not reweigh disputed evidence or evidence that depends on a witness's credibility).

In contrast to termination findings, conservatorship determinations are governed by a preponderance-of-the-evidence standard. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The appointment of a conservator is subject to review for abuse of discretion and may be reversed only if the decision is arbitrary and unreasonable. *Id.* (citing *Gillespie v. Gillespie,* 644 S.W.2d 449, 451(Tex. 1982)).

### III. ANALYSIS OF THE FATHER'S ISSUES

#### A. Section 161.001(1)(O)

In his second issue, the Father asserts the trial court erred in basing termination on the predicate termination finding under section 161.001(1)(O), which provides termination is warranted if the trial court finds by clear and convincing evidence that the parent has:

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

Tex. Fam. Code § 161.001(1)(O).

In his challenge to the trial court's finding that subsection O supports termination, the Father first asserts that the trial court's order incorporating his family service plan was issued before he was served with citation, and therefore,

the trial court lacked personal jurisdiction over him when the order was issued. The Father contends that he was not served until April 9, 2013, after the trial court's order incorporating the Department's service plan was signed on March 26, 2013. This claim is incorrect, however. The record reflects that the Father was served with citation on February 7, 2013, and he appeared at the first adversary hearing in the case held the same day. The trial court properly had jurisdiction over him at the time its March 26, 2013, order was signed. *See In re E.R.,* 385 S.W.3d 552, 563 (Tex. 2012) ("Personal jurisdiction, a vital component of a valid judgment, is dependent 'upon citation issued and served in a manner provided for by law.'") (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex.1990)); *see also In re Tex. Dep't of Fam. & Protective Servs.,* 415 S.W.3d 522, 528 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (stating a trial court does not have jurisdiction to enter an order or judgment against a person unless the record shows proper service of citation on that person, an appearance by the person, or a written of waiver of appearance).

Next, the Father asserts that his procedural due process rights were violated by the trial court's application of subsection O. The Father argues that the trial court did not follow "fundamentally fair procedures" necessary to satisfy due process when the State moves to terminate parental rights, citing *Santosky v. Kramer,* 445 U.S. 745, 747–48, 102 S.Ct. 1388 (1982); *see also In re E.R.,* 385 S.W.3d at 565–66 (holding notice to parent by publication in a termination proceeding was constitutionally inadequate where the Department lacked diligence in attempting personal service). The Father also argues that the strict approach used by reviewing courts in analyzing challenges to subsection O findings violates his procedural due process rights. The Father asserts that he did not sign or understand his family service plan, including the fact that his parental rights could be restricted or terminated if he did not fully comply with his family service plan.

7

Our review of the record reveals the Father was present at the adversary hearing on February 7, 2013. The trial court signed a temporary order that date which, among other matters, expressly provides:

**11. Findings and Notice**

**The Court finds and hereby notifies the parents that each of the actions required of them below are necessary to obtain the return of the child, and failure to fully comply with these orders may result in the restriction or termination of parental rights.**

12. Compliance with Service Plan

[The Father] is **ORDERED,** pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit.

(emphasis in original). The order also contains notice of the status hearing set March 26, 2013.

Section 263.201(a) of the Texas Family Code requires the trial court to "hold a status hearing to review the child's status and the service plan developed for the child" no later than sixty days after the trial court renders a temporary order appointing the Department as temporary managing conservator of the child. Tex. Fam. Code § 263.201(a). At the status hearing on March 26, 2013, within sixty days of order appointing the Department temporary managing conservator of the Baby, the trial court approved the Father's family service plan and ordered the Father to timely comply with each and every task set out in the plan.

The Father's family service plan incorporated in the trial court's order required the Father to complete the following tasks:

Fully participate in services and keep all appointments as scheduled with the assigned caseworker;
Successfully complete his plan of service and demonstrate to the

8

Department that he is capable of eliminating the risk of abuse and neglect to his child;

Obtain and maintain legal and verifiable employment;

Actively participate in parenting classes for 6-8 weeks and provide certificate of completion;

Participate in random drug testing as requested by the Department;

Complete a psycho-social and follow all recommendations;

Obtain and maintain housing that provides protection, food, shelter and is free of safety hazards for his child and cooperate with unannounced visits to his residence, allowing the Department access.

The Father's service plan also contains a list of "changes needed to reduce risk," as follows:

SERVICE PLAN GOALS (CHANGES NEEDED TO REDUCE RISK):

Parent will demonstrate an acceptance of the responsibility of being a parent.

Parent will show the ability to parent and protect the child.

Parent will learn to give and accept appropriate affection, demonstrating an ability to bond with the child.

Parent will demonstrate the ability to put the needs of the children ahead their own.

Parent will demonstrate the ability to protect child from future abuse or neglect, and will show concern for future safety of the child.

Family will understand and support efforts to deal with issues related to their prior maltreatment; including but not limited to counseling, medical care, or drug treatment of the child.

Parent will stop participating in criminal acts and accept responsibility for prior criminal activities.

Parent will demonstrate an understanding of how his/her own history may affect their care of the child.

Parent will understand the serious nature of the situation that placed the child in harm['s] way.

The trial court signed Additional Temporary Orders to Obtain Return of the

9

Children ordering the Father to:

> Complete a substance abuse treatment program, if requested;
>
> Complete a psychological examination and follow all recommendations;
>
> Participate in counseling which may include individual, group, or family therapy sessions;
>
> Complete parenting classes;
>
> Complete a drug and alcohol assessment and follow all recommendations of the drug and alcohol assessment;
>
> Complete random drug tests, which may include a hair follicle test;
>
> Remain drug free;
>
> Refrain from engaging in criminal activity;
>
> Maintain stable housing;
>
> Maintain stable employment;
>
> Complete all services outlined in the DFPS Family Plan of Service filed in this cause.

Both the family service plan and the trial court's order contain language advising the Father that failure to participate in the terms of the plan could result in restriction or termination of his parental rights. The service plan states:

> TO THE PARENT: THIS IS A VERY IMPORTANT DOCUMENT. ITS PURPOSE IS TO HELP YOU PROVIDE YOUR CHILD WITH A SAFE ENVIRONMENT WITHIN THE REASONABLE PERIOD SPECIFIED IN THE PLAN. IF YOU ARE UNWILLING OR UNABLE TO PROVIDE YOUR CHILD WITH A SAFE ENVIRONMENT, YOUR PARENTAL AND CUSTODIAL RIGHTS MAY BE RESTRICTED OR TERMINATED…

The order expressly provides that "the permanency plans and recommendations for the child, set out in the service plans filed with the Court, are approved and adopted by the Court as if set out verbatim in this order," and contains the following notice:

10

THIS COURT ADVISES THAT THE FAMILY SERVICE PLANS, APPROVED AND INCORPORATED BY THIS ORDER AS SET FORTH ABOVE, SPECIFICALLY ESTABLISH THE ACTIONS NECESSARY FOR THE PARENTS TO OBTAIN RETURN OF THE CHILD WHO IS IN THE TEMPORARY MANAGING CONSERVATORSHIP OF THE DEPARTMENT, AND THIS COURT FURTHER ADVISES THE PARENTS THAT FAILURE TO FULL [*SIC*] COMPLY MAY RESULT IN THE RESTRICTION OR TERMINATION OF HIS OR HER PARENTAL RIGHTS.

After the Department amended its pleadings to seek protection of Cheryl and Junior, the trial court again approved the Father's family service plan and incorporated it by order signed June 25, 2014, reciting that "the permanency plans for the children, set out in the service plans and/or Permanency Progress Reports filed with the Court, are approved and adopted by this Court and incorporated herein as if set verbatim in this order." The record reflects the Father was present at the June 25, 2014 adversary hearing.

Thus, the record establishes that the trial court signed more than one "court order that specifically established the actions necessary for the parent to obtain the return of the child," as required by section 161.001(a)(O). In addition, the orders advised the Father of the consequences of non-compliance. The Father was present at the permanency review hearings during which the court reviewed and again adopted the Father's family service plan. The record also reflects that the Father participated in development of his family service plan, including references to the Father's plans for the Children. The Father also testified at trial regarding the items he had completed in his family service plan. The absence of the parent's signature on the service plan does not affect the parent's obligation to comply with the plan's requirements. *See* Tex. Fam. Code § 263.103(c), (d) (noting that the Department may file a plan without the parents' signatures, and a plan may become effective either when signed by a parent or when ordered by the court).

11

The record shows no indication that the Father objected to the terms of the plan or did not understand the requirements. The Father's due process complaint was not raised in the trial court and is therefore not preserved for appellate review. Due process and other alleged constitutional violations must be raised in the trial court for them to be preserved for appellate review. *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (holding terminated father waived due process argument by failing to raise it at the trial court); *see also In re B.L.D.*, 113 S.W.3d 340, 349–55 (Tex. 2003) (discussing preservation of error in termination cases). The Father has waived his due process complaint.

The Father also has not challenged the sufficiency of the evidence supporting termination under subsection O. Specifically, he has not disputed that the Children were removed due to abuse or neglect or that he failed to complete the requirements of his court-ordered service plan. In the absence of a challenge to this predicate termination finding, the parental conduct described in subsection O was established as a matter of law. Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the finding. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding parental conduct under subsection O was conclusively established where parent did not dispute she failed to comply with numerous provisions in court orders specifying compliance was necessary to avoid termination); *In re J.F.C.,* 96 S.W.3d at 277(same); *see also In re A.S.D.*, No. 02-10-00255-CV, 2011 WL 5607608 (Tex. App.—Fort Worth Nov. 17, 2011, no pet.) (mem. op.) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)) (holding unchallenged findings are binding). The record contains evidence supporting the predicate finding under subsection O, as more fully detailed herein. Accordingly, we are bound by the finding. Therefore, we overrule the Father's second issue.

## B. Section 161.001(1)(E)

In his first issue, the Father challenges the sufficiency of the evidence supporting the trial court's other predicate termination finding, subsection E of section 161.001(1). Because a single predicate finding under section 161.001(1) of the Family Code is sufficient to support a judgment of termination when there is also a finding that termination is in the child's best interest, we need not address the Father's second issue. *See In re A.V.*, 113 S.W.3d at 362 (affirming termination decree based on one predicate without reaching second predicate found by fact finder and challenged by appellant); *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (affirming termination decree based on single predicate under section 161.001(1)).

## C. Best Interest

In his third issue, the Father challenges the sufficiency of the evidence supporting the trial court's finding that termination of his parental rights is in the Children's best interest. There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code § 263.307(a).

The following factors, among others, should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment: the child's age and physical and mental vulnerabilities; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and

13

personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities. Tex. Fam. Code § 263.307(b); *R.R.,* 209 S.W.3d at 116.

In addition, courts may consider other nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, a court examines several factors, including (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of these *Holley* factors to support a finding terminating a parent's rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533. With these considerations in mind, we review the evidence.

### 1. *Failure to comply with family service plan and the reasons for the noncompliance*

Evidence supporting termination under one of the grounds listed in section 161.001(1) can also be considered in support of a finding that termination is in the best interest of the Children. *See In re C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(1) grounds and best interest); *see also In re E.C.R.*, 402 S.W.3d at 249 ("Many of the reasons supporting termination under subsection O also support the trial court's best interest

finding."). In determining the best interest of a child in termination of parental rights proceedings, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the Children. *In re E.A.F.,* 424 S.W.3d 742, 752 (Tex. App.—Houston [14th Dist.] 2014, pet. filed).

Caseworker Gomez testified that the Father did not comply with several requirements set out in his court-ordered service plan. At trial, the Father acknowledged participating in only some of his court-ordered services. Gomez testified the Father did not provide any pay stubs to show he had regular, stable employment. The Father admitted that he had not provided the Department with proof of employment, but he stated he had not been asked to provide proof. His family service plan required his employment to be "verifiable," however. The Father testified he is employed by a trucking company, and a pay stub showing his net earnings of $530.16 for a one-week period was admitted in evidence. He testified he had been working for the same company for eighteen months, but he did not provide documentation to show how long he had been employed.

The Father also admitted he had never provided a copy of a lease or mortgage to establish that he had stable housing. The Father testified he lives in a four-bedroom house given to him by his first cousin. Gomez attempted to visit the Father's home the evening before trial, but he would not let her come. The Father's family service plan required him to "cooperate with unannounced visits to his residence by the Department and allow the Department access to his residence." In addition, Child Advocates reported the Father had not "established or maintained appropriate housing." Stephanie Hicks from Child Advocates testified at trial that the Father had also not permitted her to visit his home.

The Father also acknowledged that he had not financially supported his Children during the pendency of the case, but stated he was willing to pay child support. He testified he could support the Children if they were returned to him. He

also testified he brought the Children food on his visits and he took them gifts at Christmas.

The Father's participation in programs available to assist him was incomplete. The Father had completed a psychosocial evaluation, but the evaluation recommended that he participate in counseling. The Father had not completed counseling at time of trial. Gomez said the therapist recommended eight to twelve sessions, and the Father had participated in three. Gomez also testified the Father was required to complete six to eight sessions of drug counseling. The Father had attended some sessions, but had not completed counseling and was not discharged. The Father explained that he had not been able to complete counseling because he had initially been told he was not authorized to participate in counseling. He also asserted he was not referred to therapy until the November before trial and he had not had time to complete the recommended weekly sessions.

The Father's positive drug tests also demonstrate non-compliance with court orders for the return of the Children, specifically the requirements to remain drug-free, stop illegal activity, and eliminate the risk of abuse or neglect of the Children. Child Advocates, the court-appointed advocate for the Children, filed its report recommending termination of the Father's parental rights and appointment of the Department as permanent managing conservator. In addition to its concern about the Father's recent positive drug test, Child Advocates reported that the Father has not attended requested substance abuse therapy.

### 2. Desires of the Children

The Children were both very young at the time of trial and unable to communicate their desires. When children are too young to articulate their wishes, courts may consider their bond with the parents and foster parents. *See E.F. v. Tex.*

16

*Dep't Family & Protective Servs.,* No. 03-11-00325-CV, 2011 WL 6938496, at \*3 (Tex. App.—Austin Dec. 30, 2011, no pet.) (mem. op.).

Although the Father testified that he had not missed any scheduled visits with the Children, the record reflects the Father had not bonded with his Children. Caseworker Gomez testified the Father did not interact with the Children during his visits, but instead merely sat and watched them. She stated the Father did not discipline the Children or read to them. In her testimony, Child Advocates representative Hicks testified she did not hear the Children call the Father "Dad," and it did not appear they wanted to visit him.

In contrast, both Gomez and Hicks testified the Children had bonded with their foster mother, who wants to adopt them. All three Children were placed in the same foster home. The Baby had been in the home since shortly after her birth, and the other two Children had been there over six months. Hicks testified about the Children's close bond with their foster mother, stating, "They all call her mamma. They're very loving, go to her with open arms. Always hugs, kisses, always – just nurturing." Both Hicks and Gomez testified to their belief that terminating the Father's parental rights is in the Children's best interest.

### 3. The Children's Present and Future Physical and Emotional Needs and Parenting Abilities

The Children were ages one and almost two and a half years old at time of trial, and therefore, they were completely dependent on their caregiver. Gomez testified that even though the Father completed a parenting class as ordered in his service plan, it was obvious to her that the Father had not learned anything. She stated the Father did not interact with the children, did not discipline them, and made no attempt to read to them or help them with their education. Gomez said the Father just sat and watched the Children during his visits. Gomez further explained why she believed the Father had not learned from the services he had completed.

17

Gomez testified that Junior had been evaluated, and at age three, he functioned as an 11-month-old. She explained to the Father that Junior had learning disabilities, but the Father did not accept that the child was disabled. Gomez also testified the Father did not know how to feed the Baby. She acknowledged that while the Father may love his Children, he is unable to care for them.

Hicks also expressed her concerns about the Father's ability to parent the Children. She had observed numerous times when the Father was unable to feed the Baby properly. She stated the Father was "too busy" trying to call the Mother on his phone, and Hicks had to step in and help him feed and burp the Baby. When asked if there was improvement after the Father attended parenting classes, Hicks stated, "I've not seen that anything has changed since the onset of this." In contrast, the evidence at trial showed that the Children's foster mother provided excellent care. Gomez testified the foster mother is doing "a great job." Hicks testified the foster mother provides the Children with needed medical care and made sure Junior was evaluated to discover his learning disabilities. Hicks also described the foster mother's great support system.

#### 4. *Present and Future Emotional and Physical Danger to the Children*

The record reflects that the Children were removed from their parents' care as a result of drug use. The Father tested positive for cocaine and a combination of cocaine and alcohol during the pendency of the case. The Department's expert, Bruce Jefferies, reported the Father's positive results from tests performed on February 7, 2013, and April 9, 2013. He explained that the level of cocaine in the samples indicated the Father would have used the drug more than once, stating "A two day event, two and a half, three day event." Jefferies confirmed that the Father's test showed no drugs present on June 25, 2013, but he tested positive for cocaine and a mix of cocaine and alcohol on October 3, 2013. As a result, Jefferies concluded the Father had used cocaine again after the earlier use that showed up in

the February test. Jeffries described the Father's drug use as not "chronic" but more "recreational." He stated appellant is not an "addict." A parent's use of illegal drugs during the pendency of a termination suit supports a finding that the parent engaged in an endangering course of conduct. *See In re A.H.A.,* No. 14-12-00022-CV, 2012 WL 1474414, *7 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op); *see also In re J.O.A.,* 283 S.W.3d at 345. The Father offered no explanation for his continued cocaine use.

The Father admitted he was aware the Mother had a severe drug problem and acknowledged that she presented a danger to the Children. The Mother also had an extensive criminal history. Hicks testified that she had interacted with both parents and it was her belief that the Father was still involved in a relationship with the Mother. She based her opinion on "constant phone calls" between the parents, and the Father "constantly" speaking with the Mother when they appear for court hearings. Although the Father denied the relationship to the Department, Hicks testified that both parents rode together to court hearings and still referred to each other as husband and wife. Caseworker Gomez stated the Father brought the Mother to a visit with the Children despite a court order that she have no contact with the Children until she tested negative for drug use.

The Father denied that he is still involved with the Mother, stating that he simply gave her rides to court appearances. He also denied that he brought the Mother with him on a visit with the Children. The Father stated that the Mother had Christmas gifts for the Children and she followed him when he went to a scheduled visit. He then explained that the Mother was helping him bring gifts for the Children. The trial court may not have credited the Father's inconsistent testimony. We must give due deference to factfinder's factual and credibility determinations. *In re C.H.,* 89 S.W.3d at 27. We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the

factfinder's province. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Based on the evidence that the Father maintained contact with the Mother, the trial court could have inferred that he would continue these contacts if the Children were returned to him, presenting a danger to the Children. *See In re J.D.*, ___ S.W.3d ___, No. 14-14-00076-CV, 2014 WL 2583784, at *11 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The Father's cousin, Amanda, testified she only recently learned the Father was involved in a case with the Department. She knew the Father had adult children, but she did not know he had young children. Amanda questioned the Father and he was reluctant to discuss the case, but he eventually confirmed the Children were his. Amanda then offered the Father a house that one of her relatives had moved out of so that he could take care of the Children. When she first learned about the Children, Amanda did not know the Mother. When Amanda made the house available to the Father, the Mother was present. After Amanda met the Mother, she obtained a protective order to make sure the Mother could not come near the house, which was located in the neighborhood where several members of Amanda's large family live. Amanda's testimony provided further support that the Mother, and her association with the Father, posed a danger to the Children.

### 5. *Plans for the Children*

The Father testified that he and the Children would live in the four-bedroom house given to him by his cousin, Amanda. He planned to put the Children in daycare while he worked. The Father had not provided any family members' names for possible placement of the Children, stating none of his relatives wanted to be involved. The Father had not let his extended family know about the existence of the Children until confronted by this cousin. His cousin Amanda testified members of her family would like to help to keep the Children with the Father. Because Amanda had only recently learned of the case, the Department had

20

not contacted her or any other family members and they had not been evaluated. Thus the Father had not shown the Department that any family support was available to him until the day of trial.

On the other hand, the trial evidence showed that the Children were happy and safe in a stable foster home, and their foster mother wants to adopt them, including their half-brother. The Baby had been in her care since she was three days old. Both Gomez and Hicks testified the Children had bonded with their foster mother. The foster mother was described as loving and nurturing, and she had seen to the Children's medical and other needs. The foster mother had a great support system.

In sum, the record contains sufficient evidence to support the best interest finding based on the Father's positive drug tests, his failure to fully comply with the court-ordered services for reunification including the failure to establish safe and stable housing and stable employment, his inability to care for the Baby properly, and his continued relationship with the drug-addicted Mother. Viewing all the evidence in the light most favorable to the judgment, we conclude that a fact finder could have formed a firm belief or conviction that termination of the Father's parental rights is in the Children's best interest. *See J.F.C.*, 96 S.W.3d at 265–66. In light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the best-interest finding is not so significant that a fact finder could not reasonably have formed a firm belief or conviction that termination of the Father's parental rights is in the Children's best interest. *See In re H.R.M.*, 209 S.W.3d at 108. After considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in the Children's best interest. *See* Tex. Fam. Code § 161.001(2). Therefore, we overrule the Father's third issue.

21

**D. Conservatorship**

The Texas Family Code creates a rebuttable presumption that a parent will be named a child's managing conservator, unless the court finds that such appointment would not be in the child's best interest "because the appointment would significantly impair the child's physical health or emotional development" or finds that there is a history of family violence involving the parents. Tex. Fam. Code § 153.131(a). The trial court made these findings in this case.

Family Code section 161.207 provides: "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Protective and Regulatory Services, a licensed child-placing agency, or an authorized agency as a managing conservator of the child." Tex. Fam. Code § 161.207(a). In this case, upon termination of the parents' parental rights, the Department was appointed sole managing conservator of the Children.

The Father argues in his fourth issue that the evidence is legally and factually insufficient to support the appointment of the Department as the sole managing conservator of the Children. As noted above, we review conservatorship findings for an abuse of discretion. *See In re J.A.J.*, 243 S.W.3d at 616.

In cases where a trial court's termination of the parent-child relationship is reversed, a parent is required to independently challenge a trial court's conservatorship finding under section 153.131(a) to obtain reversal of the conservatorship appointment. *See In re J.A.J.,* 243 S.W.3d at 616–17; *In re A.S.*, 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In this case, however, we have overruled the Father's challenges to the termination findings, and the trial court's appointment of the Department as sole managing conservator may be considered a "consequence of the termination pursuant to

22

Family Code section 161.207." *In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at \*12 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.).

We have reviewed the evidence supporting the trial court's termination findings and found the evidence to be legally and factually sufficient. Based upon the evidence recited above, we conclude the trial court did not abuse its discretion in finding that the appointment of the Father as managing conservator would significantly impair the Children's physical health or emotional development and appointing the Department sole managing conservator of the Children. *See In re G.C.,* No. 01-12-00935-CV, 2013 WL 816440, at\*10 (Tex. App.—Houston [1st Dist.] Mar. 5, 2013, pet. denied) (mem. op.) (finding no abuse of discretion in conservatorship finding where the evidence was sufficient to support termination of parental rights). We overrule the Father's fourth issue.

## IV. CONCLUSION

We have determined the trial court properly acquired personal jurisdiction over the Father, and legally and factually sufficient evidence supports the trial court's finding of at least one predicate ground under section 161.001(1) and the trial court's finding that termination of the Father's parental rights is in the Children's best interest under section 161.001(2). In addition, the trial court did not abuse its discretion in appointing the Department as sole managing conservator of the Children. Therefore, we order the trial court's judgment affirmed.


/s/     Tracy Christopher
Justice


Panel consists of Justices Christopher, Jamison and McCally.

23