Opinion issued October 11, 2013.



In The

# Court of Appeals

For The

# First District of Texas

———

## NO. 01-13-00623-CV

———

## IN RE TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, RELATOR

**Original Proceeding on Petition for Writ of Mandamus**

## O P I N I O N

In this mandamus proceeding, the Texas Department of Family and Protective Services (the Department) seeks relief from a sanctions order entered against it. The trial court issued the order in the underlying conservatorship

proceeding involving D.D.E., a child and the real party in interest.[1] The Department's conduct at issue, however, relates to trial court proceedings in another matter—a juvenile-justice case brought against D.D.E., in which the state alleged that D.D.E. had engaged in delinquent conduct.[2] The conduct arose before the Department filed this suit.

We hold that the trial court's sanctions order is void, because the trial court lacked personal jurisdiction over the Department in the juvenile-justice case, and the trial court's plenary power had expired in that case before the court issued its sanctions order in the conservatorship case. Accordingly, we conditionally grant mandamus relief and deny the child's motion to dismiss the Department's petition.

## Background

*The juvenile court proceedings*

The State, through the Harris County District Attorney, brought suit in juvenile-justice court against D.D.E., alleging that he had engaged in deadly

---

[1] The underlying case is In re D.D.E., No. 2012-04583-J, in the 314th District Court of Harris County, Texas, the Honorable John Phillips, presiding.

[2] The related juvenile justice proceeding is In re D.D.E., No. 2012-03968-J, in the 314th District Court of Harris County, Texas, the Honorable John Phillips, presiding.

conduct. His mother, who has an extensive DFPS case history, was the complainant.

The child appeared for his first hearing accompanied by his mother and five siblings. William Connolly, the child's defense attorney, noticed that the juvenile's mother appeared to be impaired to the point that she could not speak intelligibly. Connolly ascertained that the mother had driven the child and his five sisters to court that day and planned to drive the children home after the hearing. Alarmed, Connolly brought these circumstances to the trial court's attention. He also sought the assistance of the Department's court liaison, Debra Reyna. As a liaison, Reyna works at the courthouse, helping to facilitate communications with Department employees in the field and keeping the Department staff informed about court matters, as well as assisting with matters in which the Department appears before the courts.

Connolly asked Reyna to intervene on an emergency basis and take custody of his client before his mother drove them home in an impaired state. Reyna spoke with Connolly about the situation and went into the courtroom, where she saw the mother and her children. Reyna, who did not have the authority to effect the removal herself, contacted the Department and learned that it had an open investigative file relating to the family. Reyna next contacted Terri Halsey, the

3

supervisor assigned to the family's case. After speaking with Halsey, Reyna informed Connolly and the court that the Department's files revealed that the mother had psychiatric and drug issues as well as an extensive history with the Department. Reyna also reported that Halsey stated she would not pick up a child without a court order. The Department did not take any action on the case that day, and the children left the courthouse in their mother's custody.

That evening, Connolly texted Reyna and Halsey to inform them that he planned to return to the juvenile justice court the next day to request an order to remove the child from his mother's custody. The next day, July 26, 2012, Reyna was in the courtroom when Connolly presented the trial court with a proposed order for emergency removal in Cause No. 2012-03968-J, which the court signed. The order declared:

> It is ORDERED that [the Department] take immediate custody of the child. . . and file additional pleadings and paperwork to facilitate its authority to request appointment of [the Department] as Temporary Managing Conservator of the child as in ordinary cases involving [the Department].

The trial court also signed an order authorizing Connolly to hire Lisa McCartney, an expert in child abuse and neglect, as an independent expert to assist him in his defense of the minor child in the juvenile proceedings. The trial court ordered that any agency that received a request for information from McCartney

4

related to investigations of abuse or neglect, family violence, mental health history, family history, parental history, step-parent history, or the child's history must produce such information, within four hours of the request, without delay for redaction.

Reyna received a copy of the emergency removal order and immediately informed Halsey and the assigned caseworker, Sheryl Ross, of the order. The Department, however, did not take custody of D.D.E. that evening.

Instead, the next day, July 27, the Department filed petitions in suits affecting the parent child relationship (SAPCR), requesting that D.D.E. and his siblings be removed from their mother's custody and that the court order placement of the children into state conservatorship. The Department effected the removal of the children from the mother on the same date. The petition to take temporary conservatorship of D.D.E. landed in the same trial court as his pending juvenile justice case, while the case involving his siblings was assigned to another court.

The Department's Regional Director, Scott Dixon, learned of the second order regarding the production of records on August 1, 2012, when the Department received a records request. Dixon directed Department employees to comply with the order. The Department provided McCartney with the records, in installments,

on August 1, 6, 14, 22, and 25. Connolly and McCartney used the information in those records to defend D.D.E. in the juvenile justice case. On September 24, citing insufficient evidence and "the CPS records," the State nonsuited its juvenile justice case against D.D.E.

*The SAPCR court proceedings*

A month before the State nonsuited its juvenile justice case, Connolly moved for sanctions against the Department in the pending SAPCR suit related to D.D.E. He requested that the trial court issue a show cause order, requiring the Department to show cause why it should not be held in contempt of court for violating the trial court's two orders entered in the juvenile justice case by (1) not taking immediate possession of D.D.E. on July 26 and (2) delaying the production of some Department records. The Department responded that it was not a party to the juvenile justice proceeding, and the trial court had no jurisdiction to enforce the orders that it had issued by sanctions or contempt proceedings against the Department.

Eight months after the conclusion of the juvenile justice case, the trial court held a three-day evidentiary sanctions hearing in the SAPCR suit, in which a number of Department witnesses were subpoenaed and testified. At the conclusion

6

of the hearing, the trial court ruled against the Department in an order signed on

May 21, 2013, in which it found:

- The trial court and the Department were aware of an immediate danger to the physical health and/or safety of the child and his siblings on July 25, 2012.
- To ensure the child's safety, the trial court issued an emergency order directing the Department to take immediate possession of the child.
- The Department did not take immediate possession of the child.
- The Department's failure to comply with the court's orders relating to the court's management and administration of its cases interfered with the court's exercise of its jurisdiction, the administration of justice, and the preservation of the independence and integrity of the court.
- The Department knowingly and willfully ignored a court order to take the child [into custody] for approximately 48 hours.

The order also contains the following conclusions of law:

- Section 262.104 of the Family Code allows an authorized representative of the Department, a law enforcement officer, or a juvenile probation officer, to take possession of a child without a court order if they have "personal knowledge of facts that would lead a person of ordinary prudence and caution to believe that there is an immediate danger to the physical health or safety of the child."
- Under its inherent powers, a court has "all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including the authority to issue the writs and orders necessary or proper in aid of its jurisdiction." Tex. Gov't Code § 21.001.

7

The trial court ordered the Department be fined $20,000 for "the two days" that the Department "willfully and wantonly disregarded" its order to take possession of the child. It further ordered the Department to reimburse Connolly for his time incurred in prosecuting the motion for sanctions and contempt, in the amount of $11,108.33, as well as attorney's fees on appeal of $30,000, and McCartney's expert's fees, in the amount of $3,171.98.

In addition, the trial court ordered the Department to "present the Court with a copy of the written procedures it has established to ensure that, in an emergency situation such as the one that occurred in this case, the Department will take immediate possession of a child," and to provide a list with the names and phone numbers of Department employees who are authorized to take immediate possession of a child.

The Department asked the trial court to reconsider its order; the trial court refused.

**Discussion**

"Mandamus is proper if a trial court issues an order beyond its jurisdiction." *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam); *In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (orig. proceeding). A void order is one that is beyond the power of the court to enter; error alone is not

8

enough. *Zep Mfg. Co. v. Anthony*, 752 S.W.2d 687, 689 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding). A relator must show that the court had no jurisdiction over the parties or property, no jurisdiction over the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).

As an initial matter, the child requests that we dismiss the Department's petition, urging that the trial court did not ultimately hold the Department directly in contempt and that the Department has an adequate remedy by appeal to challenge the order assessing sanctions. Because the Department seeks mandamus relief on the ground that the May 2013 order is void, we reject the child's request for dismissal of the petition. Whether trial court's order primarily aims to sanction the Department or hold it in contempt, the court must have jurisdiction to enter the order in the first place: if the trial court's order is void, mandamus relief is available even when the relator has an adequate remedy by appeal. *Sw. Bell Tel. Co.*, 35 S.W.3d at 605; *In re Vlasak*, 141 S.W.3d 233, 235 (Tex. App.—San Antonio 2004, orig. proceeding). Further, "[a] trial court that holds a party in contempt for violating a void order necessarily abuses its discretion." *In re Corcoran*, 343 S.W.3d 268, 269 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). By analogy, the same holds true in the context of trial court

9

sanctions. Mandamus relief is available to protect a litigant from the enforcement of a void order. *See Sw. Bell Tel. Co.*, 35 S.W.3d at 605. Because it is unenforceable, a trial court lacks the authority to sanction a party based upon a violation of a void order. *See id.*

*Personal jurisdiction*

The Department contends that the trial court's sanctions order is void because it is predicated on the Department's violations of orders that the trial court entered in the juvenile justice case, in which the Department did not appear as a party. A trial court does not have jurisdiction to enter an order or judgment against a person unless the record shows proper service of citation on that person, an appearance by the person, or a written memorandum of waiver of appearance on or before the date of entry of the order. *In re Suarez*, 261 S.W.3d 880, 882–83 (Tex. App.—Dallas 2008, orig. proceeding); *see In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) ("Personal jurisdiction, a vital component of a valid judgment, is dependent 'upon citation issued and served in a manner provided for by law.'") (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990)); *see also Tex. Natural Res. Conserv. Comm'n v. Sierra Club*, 70 S.W.3d 809, 813 (Tex. 2002) (explaining that citation differs from mere notice; "notice is much less formal") (citing *Perez v. Perez*, 59 Tex. 322, 324 (1883)); *see generally* TEX. R. CIV. P. 2, 21, 21a, 103–

10

109a. To constitute an answer or appearance, one must seek judgment or adjudication on some question; although an act may relate to a pending case, "it does not constitute a general appearance if it in no way recognizes that the cause is properly pending or that the court has jurisdiction, and no affirmative action is sought from the court." *Invs. Diversified Servs., Inc. v. Bruner*, 366 S.W.2d 810, 815 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.), *quoted in Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). "The emphasis is on a request for affirmative action, which impliedly recognizes the court's jurisdiction over the parties, since the mere presence of a party or his attorney in the courtroom at the time of a hearing or a trial, where neither participates in the prosecution or defense of the action, is not an appearance." *Seals v. Upper Trinity Reg'l Water Dist.*, 145 S.W.3d 291, 297 (Tex. App.—Fort Worth 2004, pet. dism'd).

No pleadings in the juvenile justice proceeding named the Department as a party to the juvenile proceeding, nor does the record reveal any return of citation or written waiver of citation by the Department connoting an appearance. Nothing in the record supports a finding that the Department made a general appearance in the juvenile case.

The child responds that Reyna, a non-lawyer who was the Department's court liaison, reported her efforts within the Department to remove the child from

the mother's custody to the trial court. He argues that such efforts constitute a legal appearance on the Department's behalf. Reyna's testimony shows that she cooperated with Connolly's effort and tried to help the Department comply with the trial court's requests, but we reject the contention that her assistance constitutes an appearance through intervention in the pending juvenile justice suit.

To the contrary, the record shows in several places that it was D.D.E.'s counsel that sought the orders from the trial court for the immediate removal of the child; counsel directly acknowledged as much in the sanctions proceedings. The Department did not appear in the juvenile justice proceedings, nor did it ask for affirmative relief from the trial court. Instead, the Department filed its own SAPCR petition seeking removal of the child the next day. We hold that the trial court lacked personal jurisdiction over the Department in the juvenile case; thus, its orders compelling the Department to act in that case are void.

*Subject matter jurisdiction*

The Department further challenges that the trial court lacked subject-matter jurisdiction to enter the sanctions order, because the court's plenary power had long-expired in the juvenile justice case. We agree. "The jurisdiction of all Texas courts . . . derives from the Texas Constitution and state statutes. Absent an express constitutional or statutory grant, we lack jurisdiction to decide any case." *In re*

12

*Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 460 (Tex. 2011) (citing *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (per curiam)). Judicial action taken after the trial court's plenary power has expired is void. *Sw. Bell Tel. Co.*, 35 S.W.3d at 605; *State ex. rel Latty v. Owens*, 907 S.W.2d 484, 486 (Tex.1995); *see also Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 n.2 (Tex.1996) (declaring that court cannot issue sanctions order after its plenary power has expired); *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (defining a void judgment as one rendered when a court has no jurisdiction over the parties or subject matter, no jurisdiction to render judgment, or no capacity to act as a court).

The trial court's invocation of its inherent powers does not confer jurisdiction where none exists in the first instance. The trial court's order invokes section 21.001 of the Government Code, which explains that "[a] court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue the writs and orders necessary or proper in aid of its jurisdiction." TEX. GOV'T CODE ANN. § 21.001(a); *Public Util. Comm'n v. Cofer*, 754 S.W.2d 121, 124 (Tex.1988).

A trial court has inherent power to sanction bad faith conduct during the course of litigation that interferes with administration of justice or the preservation of the court's dignity and integrity. *Onwuteaka v. Gill*, 908 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see Eichelberger v. Eichelberger*, 582 S.W.2d 395, 399 (Tex. 1979). The power may be exercised to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of the court. *See Lawrence v. Kohl*, 853 S.W.2d 697, 700 (Tex. App.—Houston [1st Dist.] 1993, no writ). These core functions include hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgments, and enforcing judgments. *See Dallas Cnty. Constable Pct. 5 v. KingVision Pay-Per-View, Ltd.*, 219 S.W.3d 602, 610 (Tex. App.—Dallas 2007, no pet.).

The inherent power to sanction, however, has limits. *Gill*, 908 S.W.2d at 280. Because inherent power is "shielded from direct democratic controls, [it] must be exercised with restraint and discretion.'" *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995), *quoted in Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998) (internal quotation omitted). Inherent power exists only to the

14

extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as significant interference with the core judicial functions of Texas courts. *See Lawrence*, 853 S.W.2d at 699–700.

Pertinent to this proceeding, a court's inherent judicial power does not confer jurisdiction where none pre-exists by statutory or constitutional grant. *Eichelberger*, 582 S.W.2d at 398 ("Under our system there is no such thing as the inherent power of a court, `if, by that, be meant a power which a court may exercise without a law authorizing it'" (quoting *Messner v. Giddings*, 65 Tex. 301, 309 (1886)).

Inherent power is not a substitute for plenary power. *See Lane Bank Equip. Co. v. Smith So. Equip.*, 10 S.W.3d 308, 311 (Tex. 2000) (citing *Hjarlmarson v. Langley*, 840 S.W.2d 153, 155 (Tex. App.—Waco 1992, orig. proceeding)). Consequently, a court cannot rely on its inherent power to issue sanctions after its plenary power has expired. *Scott & White Mem'l Hosp.*, 940 S.W.2d at 596 & n.2. Thus, the trial court could not use the SAPCR proceeding as a vehicle to revive its authority to sanction the Department for its conduct in response to the trial court's orders in the juvenile justice case.

## Conclusion

We hold that the trial court's May 21, 2013 order is void for lack of personal and subject-matter jurisdiction. We conditionally grant the Department's petition for writ of mandamus and direct the trial court to vacate its order. The writ will issue only if the trial court fails to comply. All pending motions are dismissed as moot.

Jane Bland
Justice

Panel consists of Justices Bland and Huddle and Judge Kerrigan.[3]

---

[3] The Honorable Patricia J. Kerrigan, 190th District Court, Harris County, Texas, sitting by assignment.