

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00332-CV

IN THE INTEREST OF D.G.

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. D2016241

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is an ultra-accelerated appeal[2] in which Appellant A.K. (Father) appeals the termination of his parental rights to his son Douglas[3] following a

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

[3]We use aliases for all minors mentioned in the opinion. *See* Tex. R. App. P. 9.8(b)(2) (requiring court to use aliases to refer to minors in an appeal from a judgment terminating parental rights).

bench trial. In three issues, Father challenges the legal and factual sufficiency of the evidence to support the trial court's constructive-abandonment, failure-to-comply-with-a-court-ordered-service-plan, and best-interest findings. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N), (O), (2) (West Supp. 2017). Because we must strictly construe these involuntary termination statutes in Father's favor, because Father was neither served with citation nor appointed counsel until three months before the termination trial, because the Department of Family and Protective Services never served Father with its service plan, because the Department did not prove by clear and convincing evidence that it had made reasonable efforts to return Douglas to Father, and because the trial court terminated Father's parental rights solely based on statutory grounds (N) and (O)—the only two grounds the Department moved for termination on at trial[4]—we are compelled to reverse the portion of the trial court's judgment terminating Father's parental rights and render judgment denying the Department's petition to terminate Father's parental rights. Father does not challenge the portion of the trial court's judgment naming the Department as permanent managing conservator, and a challenge to that portion of the judgment is not subsumed within Father's challenges to the termination judgment, so we will affirm the remainder of the trial court's judgment as it pertains to conservatorship.

---

[4]*See In re S.M.R.,* 434 S.W.3d 576, 580–82 (Tex. 2014) (refusing to deem a ground pleaded by Department but not expressly found by trial court in its judgment).

## II. Factual and Procedural Background[5]

Father was adjudicated as Douglas's father in a paternity suit in 2015. The order from the paternity suit, which was consolidated with the underlying suit, appointed Father and Mother as joint managing conservators and named Mother as the parent with the right to designate Douglas's primary residence.

### A. Douglas's Removal from Mother's Home

The Department removed twenty-one-month-old Douglas and his seven-week-old step-brother Robert from Mother and Step-Father's home in late September 2016 after learning that there was domestic violence and drug use in the home and that Robert had a femur fracture and multiple rib fractures that Cook Children's CARE Team opined were consistent with physical abuse. Father did not live in the home.

### B. Proceedings Before the Trial Court Obtained Jurisdiction over Father

The Department filed a petition for conservatorship and for termination. When the constable attempted to serve Father with citation in Hood County in October 2016, she discovered that Father was no longer living at the address that was on file.

---

[5]At the conclusion of the termination trial, in addition to terminating Father's parental rights, the trial court terminated Mother's and Step-Father's parental rights to their respective children based on the affidavits of relinquishment that they had signed. Although only Father appealed, we include references to Mother and Step-Father in the background as necessary to set forth the events that led to the termination of Father's parental rights.

3

Despite that Father had not yet been served, the conservatorship worker prepared a service plan for Father. Although Father's service plan did not contain language requiring him to maintain regular contact with the conservatorship worker, the conservatorship worker's November 2016 status report reflects that

> [Father] contacted the [conservatorship] worker by phone on 11/15/16, and provided [his] address . . . . [Father] stated that he wants to have a relationship with [Douglas] and is willing to cooperate in this case. [Father] reported that he is checking himself into an in-patient treatment facility for drug addiction[] and that he would have the facility contact the worker upon his admission. Worker sent [Father] a copy of the Family Plan Of Service via certified mail to the address [in Oklahoma that Father] provided on this date.

That service plan was returned to the Department unopened. The Department was later notified by "12 & 12"—a residential treatment facility in Tulsa, Oklahoma—that Father had entered their program on November 28, 2016, and that Father was administratively discharged from 12 & 12 on January 3, 2017.

The trial court incorporated the service plan into its November 30, 2016 status-hearing order. The order does not state that Father reviewed, understood, or signed the service plan.

After the case had been pending for nine months, the Department filed a motion for substituted service of citation, which the trial court granted. The trial court also appointed an attorney ad litem for Father, who filed an answer on June 28, 2017, and Father was "cited by posting" eight days later. Father did not appear and was not represented by counsel at any hearings prior to June 28,

4

2017, including the full adversary hearing, the status hearing, and the initial permanency hearing.

## C. Proceedings After Father Answered

Father's attorney ad litem first personally appeared on Father's behalf at the July 5, 2017 permanency hearing. The termination case then proceeded to final trial on September 27, 2017.

## D. The Trial

The conservatorship worker, who was the sole witness at the termination trial, testified that she had spoken with Father by phone on several occasions and had informed him that Douglas was in the Department's care. The conservatorship worker testified that she told Father over the phone that he was expected to complete a service plan, that she went over each of the required services with Father, that she offered to help Father locate services in Oklahoma that would qualify for his service plan but explained that the Department could not pay for services outside Texas, and that Father appeared to understand what he was required to do. During the times the conservatorship worker spoke with Father, sometimes he expressed a desire to relinquish his parental rights, and other times he expressed a desire to work his services.

Although the conservatorship worker had not spoken with Father during the eight months immediately preceding trial since Father had been released from 12 & 12 in early January 2017, she did not believe that Father had complied with the court-ordered service plan. The conservatorship worker further testified

5

that Douglas had been in the Department's care for at least six months, that Father had not seen Douglas during that time, that Father had failed to maintain contact with Douglas, and that Father had not demonstrated an ability to provide Douglas with a safe environment. The conservatorship worker asked the trial court to terminate Father's parental rights to Douglas solely on the grounds that Father had failed to complete his court-ordered service plan and that he had constructively abandoned Douglas.

When asked on cross-examination what efforts the Department had made to return Douglas to Father, the conservatorship worker explained that she had offered Father services, had mailed him the service plan, had made multiple phone calls to him, and had offered to "get him into drug treatment here in Texas." The conservatorship worker testified that the Department had not had the opportunity to assess whether Father was able to be an appropriate parent because the Department did not know where Father was living. The conservatorship worker listed the services that she believed were on Father's service plan[6] and conceded that it was possible that Father had worked his services, other than visitation, but that she did not have documentation to reflect that. The conservatorship worker further testified that she had no proof that Father had received the service plan; she only had a return receipt showing that the jail had received the service plan but she admitted that she did not know

---

[6]The conservatorship worker mistakenly testified that Father's service plan required him to maintain contact with the Department.

whether Father was actually in jail on the day that the service plan was delivered. When asked whether she knew that Father was homeless, the conservatorship worker responded that she had no knowledge of Father's living arrangements. The conservatorship worker agreed that there was nothing that Father did or did not do that caused Douglas to come into the Department's care.

After hearing the testimony above, the trial court found that Father had constructively abandoned Douglas and had failed to comply with the provisions of the court-ordered service plan and that termination of Father's parental rights to Douglas was in Douglas's best interest. The trial court appointed the Department as Douglas's permanent managing conservator. Father then perfected this appeal.

### III. BURDEN OF PROOF AND STANDARD OF REVIEW

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West Supp. 2017); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.,* 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings and strictly construe

7

involuntary termination statutes in favor of the parent.  *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence.  *See* Tex. Fam. Code Ann. §§ 161.001(b), 161.206(a); *E.N.C.*, 384 S.W.3d at 802.  Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'"  *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1388); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also E.N.C.*, 384 S.W.3d at 802.  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent-child relationship, the Department must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001(b); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.— Fort Worth 2012, no pet.).

8

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the Department proved the challenged ground for termination. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.*

### IV. NO EVIDENCE SUPPORTS THE TRIAL COURT'S SECTION 161.001(b)(1)(N) FINDING

In his first issue, Father argues that the evidence is legally and factually insufficient to support the trial court's constructive-abandonment finding under subsection (N). Father concedes that Douglas was in the Department's care for at least six months, but he challenges the remaining elements of constructive abandonment.

To show constructive abandonment, in addition to showing that the child has been in its conservatorship for not less than six months, the Department must show (1) that it "has made reasonable efforts to return the child to the parent," (2) that "the parent has not regularly visited or maintained significant

9

contact with the child," and (3) that "the parent has demonstrated an inability to provide the child with a safe environment." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N).

Returning a child to a parent does not necessarily mean that the child has to be physically delivered to the parent. *In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.). "Reasonable efforts" to reunite a parent and child can be satisfied through the preparation and administration of service plans. *See id.* at 570–72. In determining whether this element was met, we focus on the Department's efforts, not the parent's. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N)(i); *In re A.L.H.*, 468 S.W.3d 738, 745 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Here, the Department prepared only one service plan. Throughout the time the case was pending, the Department made only two attempts to mail Father a copy of this service plan: the attempt at mailing the service plan to a residential address in Oklahoma resulted in the return of an unopened envelope, and the attempt at mailing the service plan to an Oklahoma jail—even though the conservatorship worker was not sure whether Father was incarcerated there at that time—resulted in a return receipt reflecting only that the envelope was received and signed for by an employee at the jail. The Department did not attempt to send the service plan to Father during his five-week stay at the inpatient treatment facility in Tulsa. The Department's conservatorship worker admitted at the termination trial that she had no proof that Father had ever

10

received a copy of the service plan. Moreover, although the conservatorship worker testified that she had offered to help Father locate services in Oklahoma at the outset of the case, the record contains no evidence that she followed through with her offer or that the Department offered Father any services in Oklahoma after he filed an answer.

Viewing all the evidence in the light most favorable to the trial court's constructive-abandonment finding, we hold that the trial court could not have reasonably formed a firm conviction or belief that the Department put on clear and convincing evidence that it made reasonable efforts to return Douglas to Father to support the first element of constructive abandonment. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N)(i); *In re J.L.G.*, No. 06-16-00087-CV, 2017 WL 1290895, at *10 (Tex. App.—Texarkana Apr. 6, 2017, no pet.) (mem. op.) (holding evidence legally insufficient to support finding under subsection (N) because no evidence existed that father had received service plan); *In re D.N.*, 405 S.W.3d 863, 875 (Tex. App.—Amarillo 2013, no pet.) (holding evidence legally insufficient to support finding under subsection (N) because no evidence existed that Department had made efforts to provide mother with services); *In re A.Q.W.*, 395 S.W.3d 285, 290 (Tex. App.—San Antonio 2013, no pet.) (holding evidence legally insufficient to support finding that Department made reasonable efforts to return child to father where he did not receive service plan until thirty-four days before termination trial). Because there is no evidence to support the first element of constructive-abandonment, we hold the evidence is legally

11

insufficient to support the trial court's constructive-abandonment finding. *See In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied) (holding that constructive-abandonment finding fails if there is no evidence of one or more elements of subsection (N)). Having held that the evidence is legally insufficient to support the trial court's constructive-abandonment finding, we need not address Father's factual sufficiency challenge to that finding. *See* Tex. R. App. P. 47.1. We sustain Father's first issue.

## V.  NO EVIDENCE SUPPORTS THE TRIAL COURT'S SECTION 161.001(b)(1)(O) FINDING

In his second issue, Father argues that the evidence is legally and factually insufficient to support the trial court's finding under subsection (O) that he failed to complete his service plan. Father challenges the sufficiency of the evidence to prove that he was aware of the requirements of the plan.[7]

To terminate parental rights pursuant to subsection (O), the Department must show that (1) the child was removed under chapter 262 of the Texas Family Code for abuse or neglect, (2) the child has been in the managing conservatorship of the Department for at least nine months, and (3) the parent "failed to comply with the provision of a court order that specifically established the actions necessary for the parent to obtain the return of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(O). Subsection (O) first requires the existence of a

---

[7]The Department's brief relies solely on the constructive-abandonment ground to support the termination of Father's parental rights and states that "the Department will not address [Father's] complaint regarding the evidence supporting termination of his parental rights under subsection (O)."

12

valid, predicate court order that a parent has failed to comply with to obtain the return of the child. *See In re D.M.F.*, 283 S.W.3d 124, 133 (Tex. App.—Fort Worth 2009, pet. granted, judgm't vacated w.r.m.) (op. on reh'g).

During the termination trial, no orders were admitted into evidence or identified as being an order with which Father had not complied. The trial court's order incorporating the family service plan was signed on November 30, 2016—approximately seven months before Father answered. *See In re Tex. Dep't of Family & Protective Servs.*, 415 S.W.3d 522, 528 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding [mand. denied]) (stating that trial court does not have jurisdiction to enter an order or judgment against a person unless the record shows proper service of citation on that person, an appearance by that person, or a waiver of service). After Father answered, the trial court did not enter a new order incorporating the service plan. Moreover, even if Father were charged with notice of the service plan after he answered on June 28, 2017, he was not given a reasonable opportunity to comply before the trial started three months later. *See, e.g., A.Q.W.*, 395 S.W.3d at 290 (stating that because appellant did not receive his service plan until thirty-four days before termination trial, there was no evidence that he was provided with a reasonable opportunity to enroll in, much less complete, any of the requirements he could have complied with while incarcerated).

Viewing all the evidence in the light most favorable to the trial court's subsection (O) finding, we hold that the trial court could not have reasonably

formed a firm conviction or belief that the Department put on clear and convincing evidence to support the finding that Father had failed to comply with the provision of a court order that specifically established the actions necessary for Father to obtain the return of Douglas because the Department never served the service plan on Father. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O); *D.M.F.*, 283 S.W.3d at 134 (holding evidence legally insufficient to support trial court's findings terminating father's parental rights under subsection (O)). Having held that the evidence is legally insufficient to support the trial court's finding that Father failed to complete his service plan, we need not address Father's factual sufficiency challenge to that finding. *See* Tex. R. App. P. 47.1. We sustain Father's second issue.[8]

## VI. CONSERVATORSHIP NOT CHALLENGED ON APPEAL

Father does not challenge on appeal the portion of the trial court's judgment naming the Department as Douglas's permanent managing conservator. When the Department is appointed as managing conservator solely based on family code section 161.207 as a consequence of the trial court's

---

[8]Because we hold that the evidence is legally insufficient to support a finding under the two statutory grounds on which Father's parental rights were terminated, we do not address Father's third issue challenging the sufficiency of the evidence to support the trial court's best-interest finding. *See* Tex. R. App. P. 47.1; Tex. Fam. Code Ann. § 161.001(b) (requiring one statutory ground in addition to best interest for termination of parental rights); *A.Q.W.*, 395 S.W.3d at 291 (declining to address best-interest arguments because evidence was insufficient to support statutory grounds); *In re A.S.*, 261 S.W.3d 76, 90 n.15 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (same).

14

termination order, a parent's challenge to the Department's conservatorship appointment is automatically subsumed within the parent's appeal of the termination order, and a separate issue on appeal challenging the Department's conservatorship is not required. *See* Tex. Fam. Code Ann. § 161.207 (West Supp. 2017) (requiring trial court to appoint managing conservator when it terminates parental rights); *In re D.N.C.*, 252 S.W.3d 317, 319 (Tex. 2008) (holding parent's challenge to Department's conservatorship appointment was subsumed in appeal of parental-rights termination order when Department was appointed conservator solely based on section 161.207 as a result of termination order). When, however, a trial court's termination judgment appoints the Department as managing conservator pursuant to section 153.131, and the trial court has made the specific findings that section 153.131 requires—that appointment of the parent as managing conservator would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development—then a parent appealing the termination judgment must specifically challenge the trial court's section 153.131 findings and the appointment of the Department as conservator. *See* Tex. Fam. Code Ann. § 153.131 (West 2014) (authorizing appointment of Department as nonparent managing conservator if the trial court makes certain findings); *In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007) (holding parent must raise appellate issue specifically challenging trial court's section 153.131 findings or challenging

appointment of Department as conservator under section 153.131 because such a challenge is not subsumed within parent's challenge to termination order).

Here, the trial court made section 153.131 findings. The order terminating Father's parental rights to Douglas states that "[t]he Court finds that the appointment of the Respondents as permanent managing conservator of the children would not be in the children's best interest because the appointment would significantly impair [the] children's physical health or emotional development." As previously mentioned, Father did not challenge these findings. In this context, a challenge to the appointment of the Department as Douglas's permanent managing conservator is not subsumed in Father's challenges of the termination decision. *See J.A.J.*, 243 S.W.3d at 615–17; *A.L.H.*, 468 S.W.3d at 747; *C.D.E.*, 391 S.W.3d at 301–02. Accordingly, we cannot reverse the trial court's conservatorship appointment.

## VII. CONCLUSION

Having sustained Father's first two issues, which are dispositive of this appeal, we reverse the portion of the trial court's judgment terminating Father's parental rights and render judgment denying the Department's request to terminate Father's parental rights to Douglas. *See* Tex. R. App. P. 43.2(c), 47.1. Because the appointment of the Department as Douglas's permanent managing conservator under section 153.131 is not subsumed within Father's appeal of the termination judgment and is not challenged on appeal, we affirm the portion of

16

the trial court's judgment appointing the Department as Douglas's permanent managing conservator.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, KERR, and PITTMAN, JJ.

DELIVERED:  January 25, 2018