

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00173-CV

———————————————

IN THE INTEREST OF J.B. A/K/A J.D.,

A CHILD

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-385480-05

Before Pittman, Meier, and Gabriel, JJ.
Per Curiam

# MEMORANDUM OPINION

After a bench trial, the trial court found that termination of the parent-child relationship between S.D. (Mother) and her teenaged son J.B. was in J.B.'s best interest and that Mother had:

6.2.1. knowingly placed or knowingly allowed [J.B.] to remain in conditions or surroundings which endanger[ed his] physical or emotional well-being . . . ;

6.2.2. engaged in conduct or knowingly placed [J.B.] with persons who engaged in conduct which endanger[ed his] physical or emotional well-being . . . ;

6.2.3. constructively abandoned [J.B.,] who ha[d] been in the permanent or temporary managing conservatorship of the [Texas] Department of Family and Protective Services [(TDFPS)] for not less than six months[,] and: (1) [TDFPS] ha[d] made reasonable efforts to return [him] to . . . [M]other; (2) [she had] not regularly visited or maintained significant contact with [J.B.]; and (3) [she had] demonstrated an inability to provide [him] with a safe environment . . . ; and

6.2.4. failed to comply with the provisions of a court order that specifically established the actions necessary for [her] to obtain [J.B.'s] return[, when he had] been in the permanent or temporary managing conservatorship of [TDFPS] for not less than nine months as a result of [his] removal from [Mother] . . . for . . . abuse or neglect.

*See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (O), (2) (West Supp. 2017). Mother timely appealed, and in four issues, she contends that the evidence is legally and factually insufficient to support the judgment on the four grounds listed above. She does not challenge the best-interest finding. For the reasons stated herein, we hold that the evidence is legally and factually sufficient to support the trial court's

2

termination of Mother's parental rights and affirm the trial court's judgment.

## I.    BRIEF FACTS

In early December 2016, TDFPS received a referral for Mother's abandonment of J.B. and began an investigation. TDFPS Investigator Mary Houseman learned the following information:

- After Mother's probation was revoked and she was jailed in February 2016 for her failure to pay child support regarding another child, she placed J.B. with his half-brother's stepmother (Stepmother);

- Mother repeatedly told Stepmother that she would establish a home for J.B. and herself and would return for him, but she did not return, leaving J.B. with Stepmother about ten months;

- When Stepmother could no longer take care of J.B. alone, she reached out to his paternal aunt (Aunt), a foster parent;

- J.B. was shuffled between the two homes until Stepmother moved in with her parents; he then stayed with Aunt;

- Aunt and Stepmother both believed J.B. would benefit from services TDFPS could provide him because he was behind in school, wet the bed frequently, and needed to be tested for ADHD; and

- Aunt needed financial assistance to care for J.B.; Mother had provided none to Stepmother or Aunt.

Mother refused to allow TDFPS Investigator Houseman to visit the motel room she shared with the boyfriend she described as "domestically violent" but admitted that it was not a good place for J.B. or her, Mother's suggested fictive-kin placement fell through, and Mother told Investigator Houseman that she would not do anything TDFPS asked her to do. Based on Mother's TDFPS history, unstable housing, untreated mental health issues, drug history, and refusal to take a drug test or

to otherwise cooperate with TDFPS, TDFPS removed JBS from Mother and officially placed him with Aunt on December 12, 2016. The trial court ordered Mother to comply with a service plan designed to address her drug history, her instability, and her relationship with her boyfriend.

Mother waived service and did not personally appear at any hearings before the first trial or the first trial itself, which resulted in the termination of her parental rights to J.B. Through new appointed counsel, Mother alleged confusion about the trial dates in her motion for new trial, and the trial court granted her a new trial. Mother attended the hearing on her motion for new trial and the retrial and testified at both.

At the time of the December 2016 removal, J.B. could not remember the last time he had seen Mother. She did not visit him at all between the removal and the original trial held October 17, 2017, and she visited him only twice—February 14, 2018 and March 30, 2018—between the original trial and the April 9, 2018 retrial. Other than those two visits, Mother did nothing required by her service plan.

## II. DISCUSSION

### A. The Evidence Sufficiently Supports the Termination of Mother's Parental Rights Based on Subsection (O) of the Texas Family Code.

#### 1. TDFPS Must Prove Its Case by Clear and Convincing Evidence.

For a trial court to terminate a parent-child relationship, TDFPS must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Texas Family Code section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re*

4

*E.N.C.*, 384 S.W.3d 796, 802–03 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

### 2. We Determine Whether the Evidence Is Sufficient to Support Termination Findings.

#### a. To Determine Legal Sufficiency, We Review All the Evidence in the Light Most Favorable to the Finding.

To determine whether the evidence is legally sufficient in termination cases, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *See* Tex. Fam. Code Ann. § 161.001(b); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We presume that the factfinder settled any conflicts in the evidence in favor of its finding if a reasonable factfinder could have done so. *J.P.B.*, 180 S.W.3d at 573. We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.*

The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

5

### b. To Determine Factual Sufficiency, We Carefully Review All the Evidence, Giving Appropriate Deference to the Factfinder.

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting termination. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and will not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that the challenged finding is true. *See* Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder reasonably could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

### 3. The Evidence Is Legally and Factually Sufficient to Support the Noncompliance Finding Against Mother.

In her fourth issue, Mother contends that the evidence is legally and factually insufficient to support the trial court's finding under subsection (O) that she "failed to comply with the provisions of a court order that specifically established the actions necessary for [her] to obtain [J.B.'s] return[, when he had] been in [TDFPS's] . . . temporary managing conservatorship . . . for not less than nine months as a result of [his] removal from [Mother] . . . for . . . abuse or neglect." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O). Mother argues that no specific court order incorporating the service plan with which she must comply is in evidence, nor is there clear and convincing proof of abuse or neglect. She does not contend that she completed any

6

part of the court-ordered service plan except visiting J.B. twice during the almost sixteen months he was in TDFPS's custody before the retrial.

### a. Clear and Convincing Evidence Shows a Court Order Specifically Established the Actions Necessary for Mother to Regain Custody of J.B.

Subsection (O) initially requires that a parent has failed to comply with a valid order for obtaining the return of the child. *See In re D.G.*, No. 02-17-00332-CV, 2018 WL 547787, at *5–6 (Tex. App.—Fort Worth Jan. 25, 2018, no pet.) (mem. op.); *In re D.M.F.*, 283 S.W.3d 124, 133 (Tex. App.—Fort Worth 2009, pet. granted, judgm't vacated w.r.m.) (op. on reh'g). A trial court cannot enter an order or judgment against a person unless the record shows proper service of citation on that person, her appearance, or a waiver of service. *D.G.*, 2018 WL 547787, at *5–6; *In re Tex. Dep't of Family & Protective Servs.*, 415 S.W.3d 522, 528 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding [mand. denied]).

Mother waived service on January 31, 2017. Her waiver included the statement that she understood that absent written notification to the attorney for TDFPS of any changes, "any notices that [she] might otherwise be entitled to receive with regard to disposition of this proceeding" would "be forwarded to [her] at the address indicated below." However, Mother did not indicate a mailing or physical address on the waiver; instead she provided telephone numbers and an email address.

### (i) The Trial Court Judicially Noticed the February 7, 2017 Temporary Order Incorporating Mother's Service Plan.

Although Mother argues that TDFPS "did not introduce or ask the court to take judicial notice of any specific service plan," at the retrial, the trial court took judicial notice of the February 7, 2017 "Temporary Order Following Adversary Hearing as to [Mother] Only" (Temporary Order), which incorporated the service plan. *See In re M.C.*, No. 02-15-00290-CV, 2016 WL 354186, at *3 (Tex. App.—Fort Worth Jan. 28, 2016, no pet.) (mem. op.) (holding that a trial court's judicial notice of its file makes its "order described by subsection 161.001(b)(1)(O) . . . part of the record that we may consider on appeal for purposes of [a parent's] sufficiency argument" and listing similar cases from sister courts holding the same).

### (ii) The Temporary Order Was Clear and Specific.

The Temporary Order included the following provisions:

12. **Finding and Notice**

   **THE COURT FINDS AND HEREBY NOTIFIES THE PARENTS THAT EACH OF THE ACTIONS REQUIRED OF THEM BELOW ARE NECESSARY TO OBTAIN THE RETURN OF THE [CHILD], AND FAILURE TO FULLY COMPLY WITH THESE ORDERS MAY RESULT IN THE RESTRICTION OR TERMINATION OF PARENTAL RIGHTS.**

13. **Psychological or Psychiatric Evaluation:**

   13.1. **IT IS ORDERED** that **[MOTHER]** shall submit to and cooperate fully in the preparation of a court-ordered psychological or psychiatric evaluation. . . .

14. **Counseling**

14.1. **IT IS ORDERED** that **[MOTHER]** shall attend and cooperate fully in counseling sessions to address the specific issues that led to the removal of the child from the home and to address any additional issues arising from the psychological examinations or from the counseling sessions. Said counseling sessions shall begin no later than 2-15, 2017 [handwritten], and shall continue until the counselor determines that no further sessions are necessary or until further order of this Court.

15. **Parenting Classes**

15.1. **IT IS ORDERED** that **[MOTHER]** shall attend, participate in and successfully complete parenting classes and shall submit to [TDFPS] or file with [the] Court a certificate of completion no later than 5-15-2017 [handwritten].

16. **Drug and Alcohol Assessments and Testing**

16.1. **IT IS ORDERED** that **[MOTHER]** shall submit to and cooperate fully in the preparation of the court-ordered drug and alcohol dependency assessment.

17. **Compliance with Service Plan**

17.1. **[MOTHER]** is **ORDERED**, pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in [TDFPS]'s original, or any amended, service plan during the pendency of this suit.

> **(iii) The Service Plan Filed After the Temporary Order and Mother's Waiver Were Also Clear and Specific.**

The family service plan filed with the court February 13, 2017, after Mother's waiver of service, includes the following among her required tasks and services:

> [Mother] will actively participate in, contact, and follow the recommendations of individual therapy. The goals will include addressing the issues surrounding the reason for removal of the child, past and present substance abuse, past trauma, etc. [Mother] is expected to consistently engage in counseling until successfully discharged by the therapist.

. . . .

[Mother] will initiate and maintain regular contact with the CPS [Child Protective Services] caseworker weekly to provide progress updates. You can text, call or email the caseworker.

[Mother] will attend all scheduled visitation with her child. This will allow her the opportunity to enhance the parent/child relationship and strengthen their bond. If you are unable to attend your scheduled visit, you must contact the case transporter 6 hours before the scheduled visit. If you do not arrive within 15 minutes of the scheduled visit the visit will be cancelled and it will not be rescheduled.

[Mother] will refrain from any and all illegal activities.

[Mother] will successfully complete a parenting course (Love and Logic) and provide [a] certificate to caseworker and be able to demonstrate the ability to protect child from future abuse or neglect, and will show concern for future safety of the child. [Mother] will also demonstrate the ability to provide basic necessities such as food, clothing, shelter, medical care, and supervision for the child.

[Mother] will submit to a Psychological Evaluation, sign a release with her mental health provider and follow up with all recommendations. . . .

[Mother] will obtain a substance and alcohol abuse assessment and follow the recommendations. This includes, but is not limited to: inpatient/outpatient treatment, substance abuse counseling, attending 90 NA/AA meetings in 90 days and providing sign in sheets to the caseworker to demonstrate attendance and continue regular attendance at NA/AA meetings throughout the case, obtaining a tenured NA/AA sponsor and a home group, maintain daily contact with NA sponsor, and work the 12-step program with the sponsor.

[Mother] will submit to random drug screenings when requested by CPS to include but are not limited to: Oral Swabs, UA, Hair Follicle and or Nail Clipping. Drug screenings must be completed within 4 hours of the request by the CPS worker. She will understand that each missed request will result in an automatic positive screening which will be noted in the CPS file.

[Mother] will understand that this service plan is not a checklist, but a plan for positive life changes. [Mother] will understand that this case has a one[-]year timeframe and as the case progresses, additional

10

services may be required.

Consequently, we hold clear and convincing evidence supports the finding that a specific court order establishing the steps Mother was ordered to undertake in order to regain custody of J.B. was in evidence.

### b. Clear and Convincing Evidence Shows Abuse or Neglect Under Chapter 262 of the Texas Family Code.

Mother also challenges the legal and factual sufficiency of evidence supporting the abuse-or-neglect element of the subsection (O) ground. As the Texas Supreme Court has explained, "whether removal . . . was for abuse or neglect depends on the surrounding facts and circumstances and is generally determined on a case-by-case basis." *In re S.M.R.*, 434 S.W.3d 576, 583 (Tex. 2014). The words "abuse or neglect" in the statute "are used broadly." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). They "necessarily include[] the risks or threats of the environment in which the child is placed." *Id.*

Mother argues that J.B. was not removed from her for abuse or neglect under Chapter 262 of the Texas Family Code, as required by section 161.001(b)(1)(O), because:

- The case was opened when she tried to reclaim J.B. from Stepmother;

- Investigator Houseman acknowledged that Mother did not neglect or abuse J.B. before the removal; and

- TDFPS's "allegations of drug use, abuse and mental health issues were either remote in time, speculative, or unproved."

*First*, that TDFPS did not physically remove J.B. from Mother because he was

11

not living with her does not mean he was not removed under the statute. "Children are removed from their parents under Chapter 262 for the abuse or neglect of a child whe[n] the children may have been physically in the care of a relative, a medical or social services institution, or [TDFPS]." *D.F. v. Tex. Dep't of Family & Protective Servs.*, 393 S.W.3d 821, 830 (Tex. App.—El Paso 2012, no pet.) (holding children placed in a child crisis center by the person with whom their parent placed them and later removed by TDFPS were removed from the parent under Chapter 262 for abuse or neglect), *abrogated on other grounds by E.C.R.*, 402 S.W.3d at 246; *see E.C.R.*, 402 S.W.3d at 248 (holding child was removed from its mother despite her incarceration at the time of removal).

*Second*, even though Investigator Houseman acknowledged (1) Mother did not abuse or neglect J.B. by placing him with Stepmother and (2) it was "fair" to say that Mother did not endanger J.B. before the removal, Investigator Houseman also testified:

- The referral included a "concern for [Mother's] drug use";

- Mother had a history of methamphetamine and marihuana use but refused to tell Investigator Houseman when she last used drugs;

- Investigator Houseman became concerned that Mother was currently using drugs when she observed Mother "moving around scratching herself" and Mother's "up and down" moods during their first meeting;

- Mother refused a drug test;

- Mother had been diagnosed with post-traumatic stress disorder and major depression but was not taking medication;

12

- Mother's CPS history included recurrent mental health and drug issues;

- Before the removal, J.B. could not remember when he had last seen Mother;

- Mother kept telling Stepmother or Aunt that she would retrieve J.B. but made no arrangements to do so;

- Mother told Investigator Houseman that she lost her housing when she went to jail; had been in and out of motel rooms and at times, homeless since her release; and currently lived with an emotionally abusive, "domestically violent" boyfriend;

- Mother recognized that she did not have a good place for J.B. and her to live;

- Mother refused to give Investigator Houseman her address or allow a home visit before the removal;

- Neither Stepmother nor Aunt could continue to care for J.B. without "paperwork to help [satisfy] his . . . medical needs[ and] school needs";

- Mother refused CPS-supervised visits with JBS and said "[s]he wasn't going to do anything CPS asked of her";

- J.B. would have been in danger if he were returned to Mother while she was using drugs, having untreated mental health issues, and in a relationship fraught with domestic violence; and

- In Investigator Houseman's opinion, Mother was not ready to regain custody of J.B.

Further, the Temporary Order judicially noticed by the trial court includes the following unchallenged finding:

> Having examined and reviewed [TDFPS]'s pleadings and the sworn affidavit accompanying the petition and based upon the facts contained therein and the evidence presented to this Court at the hearing conducted on this date, the Court finds there is sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a danger to [J.B.'s] physical health or safety . . . which was caused by [Mother's] act or failure to act . . . . The Court further finds that it is

13

> contrary to [J.B.'s] welfare . . . to remain in the home, and[] (2) the urgent need for protection required [his] immediate removal . . . and reasonable efforts consistent with the circumstances and providing for [his] safety . . . were made to eliminate or prevent [his] removal . . . ; and (3) reasonable efforts have been made to enable [him] to return home, but there is a substantial risk of a continuing danger if [he] is returned home.

Accordingly, applying the appropriate standard of review, we hold that the evidence is legally and factually sufficient to satisfy the abuse-or-neglect element of subsection (O). *See, e.g.*, *E.C.R.*, 402 S.W.3d at 249 & n.8 (holding that the evidence along with the temporary order's unchallenged findings like those above "establish[ed] that E.C.R. was removed from [his parent] under chapter 262 for abuse or neglect"); *M.C.*, 2016 WL 354186, at *3 (relying on the parent's untreated illness to uphold the sufficiency of abuse-or-neglect evidence); *In re K.L.C.*, No. 11-14-00019-CV, 2014 WL 3639124, at *3 (Tex. App.—Eastland 2014, pet. denied) (mem. op.) (holding evidence of the home's conditions and parent's drug use justified the removal for abuse or neglect); *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) (noting factfinder can infer drug use from refusal of drug test).

Because we have held the evidence legally and factually sufficient on both elements challenged by Mother, we also conclude that the evidence is legally and factually sufficient to support the trial court's termination finding based on subsection (O). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O).

### c. Mother Did Not Preserve a Notice Issue Regarding the Service Plan, But Evidence Shows She Had Notice of It.

To the extent Mother implicitly incorporates a notice issue into her sufficiency

complaint, she did not preserve it. *See* Tex. R. App. P. 33.1; *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003), *cert. denied*, 541 U.S. 945 (2004); *In re C.R.*, No. 11-17-00244-CV, 2018 WL 1179323, at *3 (Tex. App.—Eastland Feb. 28, 2018, no pet.) (mem. op.). Nevertheless, the evidence shows that she was aware of the service plan despite not signing it.[1]   Although TDFPS conservatorship caseworker Amy Granados testified that she did not believe Mother reviewed the service plan because Mother refused to meet with her face-to-face, Granados also testified:

- She communicated with Mother through texts and phone calls about the service plan;

- It was clear to Granados that Mother knew she must comply with the service plan; and

- Mother completed none of the service-plan requirements except two visits with J.B. after going more than a year without seeing him or having any other significant contact with him.

Also, Mother admitted in her testimony:

- She had received the service plan by email but had not signed it;

- She had refused to submit to court-ordered drug tests in this case;

- She could offer no evidence of completing any services during this case; and

- She had visited with J.B. only twice because she had refused to attend TDFPS-supervised visits.

Even if Mother had preserved her notice issue, we would therefore hold that

---

[1]We note that Mother was bound by the service plan despite her choice not to participate in its formation. *See* Tex. Fam. Code Ann. § 263.103(c)–(d) (West Supp. 2017); *In re T.T.F.*, 331 S.W.3d 461, 478 (Tex. App.—Fort Worth 2010, no pet.).

she had notice of the court-ordered service plan.

We overrule her fourth issue.

## B.     We Do Not Reach Mother's Three Remaining Issues.

Along with a best-interest finding, a finding of only one ground alleged under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re A.H.*, No. 02–17–00222–CV, 2017 WL 5180785, at *13 (Tex. App.—Fort Worth Nov. 9, 2017, pet. denied); *In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.).   Because a finding of only one ground alleged under section 161.001(b)(1) coupled with a best-interest finding supports termination, we do not reach Mother's three remaining issues.  *See* Tex. R. App. P. 47.1; *A.V.*, 113 S.W.3d at 362; *In re D.N.*, 405 S.W.3d 863, 872 (Tex. App.—Amarillo 2013, no pet.).  *In re D.D.*, No. 02-17-00368-CV, 2018 WL 1630708, at *6–8 (Tex. App.—Fort Worth Apr. 5, 2018, no pet.) (mem. op.).

## III.   CONCLUSION

Having overruled Mother's fourth issue, which is dispositive, we affirm the trial court's judgment.

Per Curiam

Delivered:  September 27, 2018

16