# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-23-00166-CV

**Natin Paul, Appellant**

**v.**

**The Roy F. and Joann Coal Mitte Foundation, Appellee**

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-003223, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The district court imposed $181,760 in monetary sanctions on appellant Natin Paul for his conduct in the underlying suit between Paul and appellee The Roy F. and Joann Coal Mitte Foundation (Mitte). In four issues on appeal, Paul asserts that the sanctions order should be reversed because: (1) the district court could not award "contempt-based" monetary sanctions to a private litigant such as Mitte; (2) Mitte failed to obtain and serve a writ of injunction on Paul; (3) Mitte failed to segregate its attorneys' fees; and (4) the sanctions order violated Paul's due-process rights. We affirm.

## BACKGROUND[1]

In the underlying litigation between the parties, an arbitrator found Paul and two corporate entities that he controls to be jointly and severally liable to Mitte for approximately $1.9 million in damages, and the district court confirmed the arbitration award. *See Paul v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-21-00502-CV, 2023 WL 1806101, at *3 (Tex. App.—Austin Feb. 8, 2023, pet. denied) (mem. op.). On May 13 and June 10, 2022, respectively, the district court entered a temporary restraining order and a post-judgment injunction prohibiting Paul and the corporate entities from transferring "any of their assets for less than fair value." *Id.* The injunction further required each of the defendants, on the first day of each month, to "file a sworn report to the Court, with notice to all parties, listing each transfer, conveyance, or dissipation of assets in excess of $25,000 made over the course of the prior month, or, if applicable, that no such transfers or conveyances were made." *Id.*

On July 8, 2022, Mitte moved for sanctions against Paul, alleging that he "did not file on July 1, 2022 (or at any other time) a sworn report to the Court listing each transfer, conveyance, or dissipation of assets in excess of $25,000 made over the course of the prior month, or a report that no such transfers or conveyances were made, as required by the Order." Mitte requested sanctions against Paul and the corporate entities in the amount of "$500 per day per judgment debtor starting from July 2, 2022, and continuing until judgment debtors are in

---

[1] Because the parties are familiar with the underlying facts of the case and its procedural history, and because those facts are recited in greater detail in this Court's earlier opinions, *see, e.g.*, *Paul v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-21-00502-CV, 2023 WL 1806101 (Tex. App.—Austin Feb. 8, 2023, pet. denied) (mem. op.); *WC 1st & Trinity, LP v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-19-00799-CV, 2021 WL 4465995 (Tex. App.—Austin Sept. 30, 2021, pet. denied) (mem. op.), we do not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it, *see* Tex. R. App. P. 47.1, 47.4.

compliance with the Order." On September 2, 2022, Mitte filed a motion for show-cause order, asking that Paul "be held in civil contempt" for disobeying the injunction. Specifically, Mitte alleged that "[n]o Defendant has filed a sworn report . . . on July 1, 2022 when the first such report under this injunction was due, or on August 1, 2022, when the second such report under this injunction was due, or on any other date."[2] On September 30, 2022, the district court informed the parties via email that it was granting a hearing on both Mitte's motion for contempt and its motion for sanctions. The district court later informed the parties that the hearing was scheduled for November 9, 2022.

On November 4 and 7, 2022, Paul filed the sworn reports required by the injunction, and he stated therein that he did not transfer, convey, or dissipate any assets in excess of $25,000 for the time periods specified in each report.[3] At the contempt and sanctions hearing on November 9, Paul provided testimony to that effect. However, bank records admitted at the hearing showed that on June 22, 2022, Paul had wired $100,000 from his personal bank account to a professional basketball (NBA) player with the initials "A.B." Paul testified that he did not remember the transaction and did not recognize the bank statements that reflected the transaction, although he acknowledged that he knew the player's identity.[4] Paul testified that he

---

[2] The contempt proceedings against Paul were the subject of this Court's opinion in *In re Paul*, No. 03-23-00160-CV, 2023 WL 2718454, at *7 (Tex. App.—Austin Mar. 31, 2023, orig. proceeding) (mem. op.). We take judicial notice of the record and pleadings in that case. *See Reynolds v. Quantlab Trading Partners US, LP*, 608 S.W.3d 549, 557 n.3 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("An appellate court may take judicial notice of its own records in the same or related proceedings involving the same or nearly the same parties.").

[3] The report executed on November 4 covered the entire period from June 10, 2022, the date of the injunction, until the date of the report. The reports executed on November 7 covered each month during that period.

[4] The parties used the player's initials to protect his identity.

3

did not personally owe this player money but acknowledged that it was possible the payment had been made "in the normal course of business" and that he needed "one to two weeks" to "go back and look through [his] records."

At the conclusion of the November 9 hearing, Mitte argued that Paul should be held in civil contempt for failing to file the sworn reports and in criminal contempt for perjury and making the $100,000 transfer, if it was "not for fair value" in violation of the injunction. However, Mitte acknowledged that Paul was "entitled to an opportunity to have another day in court on that and present any defenses he has to that criminal contempt." The district court agreed and recessed the proceedings until November 17. The district court also ordered Paul to provide Mitte with all of Paul's personal bank statements from June onward, "for the purpose of determining whether or not Mr. Paul is in contempt of court . . . . both civil and criminal, as to whether or not he has filed false statements under oath or made false statements under oath in court," and to determine "whether the reports are incorrect in stating that there [has] been no transfer, conveyance, or dissipation of assets . . . in excess of $25,000 . . . for less than fair value, which we'll require Mr. Paul to be able to determine the purpose of the transfer and the value he received in response."

At the hearing on November 17, Paul produced bank records that confirmed that he had wired the NBA player $100,000 on June 22. He testified that he did not personally owe this player money but that one of his companies did. Paul explained that this "was a payment to reduce certain indebtedness that was owed to the recipient." Paul also testified that he did not know until the November 9 hearing that failing to report this payment violated the injunction. Paul claimed that he was acting on the advice of his counsel in not reporting the transfer, although he could not recall if he had discussed this specific transaction with counsel.

4

Additional evidence admitted at the hearing related to Paul's bank accounts. Paul testified that he had only two personal bank accounts, a Chase account with a balance of $5,800 at the time of the hearing, and an RBC Wealth account with a balance of $0. However, Mitte introduced evidence showing that Paul had received $10 million from the closing of a sale in bankruptcy court in March 2022 and that the sale had also resulted in approximately $100 million being transferred to a Horizon Bank account in the name of "Travis County Exchange Corporation as qualified intermediary for Natin Paul." Paul denied that this bank account was one of his personal accounts. Additionally, bank records from another of Paul's wholly owned and controlled businesses, Westlake Industries, showed a transfer of $963,323.18 from the Horizon Bank account to Westlake Industries "b/o [by order of] Natin Paul" on June 10, 2022, the date the injunction was signed.

At the conclusion of the hearing, the district court informed the parties that it was "seriously considering both contempt and sanctions." The court explained,

> I am considering, among other things, whether the appropriate sanction might include the cost to the Mitte Foundation for attorney's fees and expenses it took to get to the truth of this, which should have been reported to the Court every month starting July 1st.

> And so I'm going to ask [counsel for Mitte] to prepare and file a submission relating to the expense that his client incurred, which is what it took to get to the point today where we at least got to the bottom of one hundred-thousand-dollar transfer that should have been reported.

> I am concerned that there are other bank accounts out there that Mr. Paul has custody or control over. And I am concerned about the fact that this isn't the first time that this Court feels that the defendants in this litigation are not being honest with the Court. I do agree that the harm to Mitte is not the standard, but it might be included in an appropriate sanction.

5

The district court then announced that it was taking the matter under advisement and concluded the hearing. Thereafter, Mitte submitted a declaration and invoices showing that a total of $90,880.00 was spent on attorney's fees in attempting to enforce the injunction and uncovering Paul's violations of the injunction and false sworn statements.

On March 10, 2023, the district court issued an order of contempt and commitment, finding Paul in both civil and criminal contempt.[5] Also on that date, the district court issued a separate order granting sanctions against Paul in the amount of $181,760.00, which was consistent with Mitte's request in its pleadings "that sanctions not be limited to the attorney's fees incurred in its efforts to obtain Mr. Paul's compliance, but rather at double the amount of such attorney's fees." The sanctions order included the following "factual findings":

> The Court entered a post-judgment injunction (the "Injunction") under Tex. R. App. P. 24.2 on June 10, 2022, enjoining Defendants Natin Paul, WC 3rd and Congress GP, LLC, and WC 1st and Trinity GP, LLC (Defendants) from transferring any of their assets over $25,000 for less than fair value.

> In the Injunction, "assets" were specifically defined to "include any property or thing of value, including but not limited to . . . cash . . . ."

> The Injunction contained terms similar to those in the Temporary Restraining Order signed on May 13, 2022.

---

[5] On March 13, 2023, Paul filed in this Court an emergency motion for temporary relief and an emergency petition for writs of habeas corpus and mandamus, challenging the portions of the order involving criminal contempt. This Court granted the emergency motion and later modified the contempt order to strike the portions of the order that held Paul in contempt for violations of the injunction relating to the $963,323.18 transfer to Westlake Industries, which we concluded violated Paul's due-process rights. *See In re Paul*, 2023 WL 2718454, at *7-8. In all other respects, we denied Paul's petition. *See id*. at *9.

The Injunction further ordered Defendants to file monthly reports listing every transfer over $25,000, whether it was made for fair value or not.

Mr. Paul and his counsel were aware of the Injunction. Mr. Paul's counsel participated in the Injunction hearing and unsuccessfully appealed the Injunction to the Third Court of Appeals. When asked if he was aware of the Injunction, Mr. Paul did not deny having knowledge of the Injunction, responding that he was generally aware of the events of the litigation. To the extent that Mr. Paul made equivocal testimony concerning his lack of memory or awareness of the Injunction, the Court finds that this testimony is not credible.

Mr. Paul failed to file the monthly reports due on June 30, July 31, August 31, September 30, and October 31, 2022. He belatedly filed such reports shortly before the November 9, 2022, hearing on contempt and sanctions.

Mr. Paul made a transfer to an NBA player of $100,000 on June 22, 2022.

In the late-filed report for June 2022, Mr. Paul failed to list the $100,000 transfer. After being confronted with evidence of this transfer at the November 9, 2022, hearing, Mr. Paul equivocated, claiming not to remember such transfer, but then later reported the transaction on an amended report. To the extent that Mr. Paul made equivocal testimony concerning his lack of memory or awareness of the $100,000 transfer to the NBA player, the Court finds that this testimony is not credible. The Court finds that Mr. Paul's failure to report the $100,000 transfer, as required by the Injunction, was intentional.

Mr. Paul eventually reported the $100,000 transfer after the first part of the contempt hearing. But the Court finds that the transfer itself violated the Injunction—it was not made for fair value because Mr. Paul did not receive anything of value from the NBA player and Mr. Paul admitted he did not personally owe the NBA player any money. The Court finds that Mr. Paul was aware that the $100,000 transfer violated the Injunction, as a prohibited transfer not for fair value.

Mr. Paul also ordered $963,323.18 of his funds (held by an escrow agent) to be transferred to a wholly owned business of his, Westlake Industries, on June 10, 2022, the date the Injunction was signed. The Court finds that this transfer was not made for fair value. Among other reasons, the Court's finding is based on the timing of the transfer and the fact that Mr. Paul omitted it from his sworn report and then testified falsely concerning the transfer at the hearing on November 17, 2022. Mr. Paul also failed to provide persuasive evidence that the transfer was for

fair value or that the Injunction did not require it to be reported. The Court finds that Mr. Paul's testimony concerning this transfer was not credible. The Court finds that Mr. Paul was aware that the $963,323.18 transfer violated the Injunction, and if made prior to the signing of the Injunction, violated the Temporary Restraining Order, as a prohibited transfer not for fair value.

The failure to report the $963,323.18 transfer, which has not been cured, also violated the Injunction, and if made prior to the signing of the Injunction, violated the Temporary Restraining Order. The Court finds that Mr. Paul's failure to report the $963,323.18 transfer, as required by the Injunction and the Temporary Restraining Order, was intentional.

The Court finds that Mr. Paul failed to produce sufficient records to support his testimony at the hearing on November 17, 2022.

The Court also notes the following acts of intentionally providing false testimony to the Court, i.e., perjury, by Mr. Paul:

> Filing a false sworn report, specifically stating "under penalty of perjury," for June 2022 that no transfers over $25,000 were made that month when in fact at least two such transfers were made;

> Falsely testifying at the November 9, 2022 hearing that he made no transfers over $25,000 during June 2022; and

> Falsely testifying at the November 17, 2022 hearing concerning the number of bank accounts in his name or under his personal control.

Mr. Paul's lies to the Court while under oath were pervasive and inexcusable, and served to deliberately thwart the functions of the Court in enforcing its Injunction.

Mr. Paul's attempt to rely on advice of counsel is factually unbelievable, legally insupportable, and contradicted by the statements of his counsel.

Mr. Paul has repeatedly disobeyed Court orders in this litigation as well as in related litigation and the related arbitration, and he has been sanctioned numerous times in the past; and such sanctions have failed to deter Mr. Paul from continued

disobedience of court orders and lack of candor with the Court.[6]

Plaintiff incurred $90,880.00 in reasonable and necessary attorneys' fees in filing the motions for contempt and sanctions and prosecuting same through two live hearings and extensive briefing.

Based on the foregoing, the Court finds that sanctions against Natin Paul are warranted for the multiple violations of the Injunction, especially considering the intentional nature of Mr. Paul's disobedience, the fact that it persisted over several months, the false statements made to the Court in open court, and wanton disregard of this Court's orders committed by Mr. Paul, the significant costs and fees incurred by Plaintiff as a result of Mr. Paul's actions, the burden imposed on the Court in enforcing the Injunction, and Mr. Paul's history of noncompliance and previous sanctions in this litigation.

This appeal followed.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion for sanctions for abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion if it acts without reference to guiding rules and principles. *Id*. at 839. In other words, the trial court's

---

[6] In its order, the district court did not identify the previous sanctions against Paul or describe his past sanctionable conduct. However, in Mitte's brief, Mitte alleges that during the course of the litigation, Paul had attempted to fraudulently transfer his partnership properties after an arbitral receiver had been appointed; had been previously sanctioned by the arbitrator in the amount of $7,500 and by the trial court in the amount of $105,346 for discovery abuse and failing to follow court orders; had filed unauthorized bankruptcies for the partnerships, thereby invoking the automatic bankruptcy stay, five minutes before the deposition of his vice president of accounting, and that the bankruptcies were subsequently dismissed for lack of authority; and formed two Delaware entities for the purpose of suing the receiver and the lawyers involved in this litigation, resulting in sanctions of $150,000. Evidence relating to these allegations, including exhibits that Mitte attached to its brief, are outside of the record and thus cannot be considered in our analysis. However, we note that some of Mitte's allegations have been discussed in related cases involving Paul. *See, e.g., 1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 361, 378-381 (Tex. App.—El Paso 2022, no pet.); *WC 1st & Trinity, LP*, 2021 WL 4465995, at *2-3, 11-12 (Tex. App.—Austin, September 30, 2021, pet. denied) (mem. op.); *see also WC 1st & Trinity GP, LLC v. Milligan*, No. 1-20-CV-995-LY, 2021 WL 6750934, *2-3 (W.D. Tex. Mar. 18, 2021).

9

ruling should be reversed only if it was arbitrary or unreasonable. *Id.* "The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision." *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

The applicable source of authority for the sanctions order in this case is the inherent authority of a trial court to sanction parties in judicial proceedings. *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997). "This inherent power exists to enable a court to effectively perform its judicial functions and to protect its dignity, independence, and integrity." *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 147 (Tex. App.—Dallas 2011, no pet.). "This power is limited, however, 'to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions' of the court." *In re Est. of Perez-Muzza*, 446 S.W.3d 415, 424 (Tex. App.—San Antonio 2014, pet. denied) (quoting *Kutch v. Del Mar Coll.*, 831 S.W.2d 506, 510 (Tex. App.—Corpus Christi-Edinburg 1992, no writ.)). "The core functions of the court include 'hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgments, and enforcing judgments.'" *Id.* (quoting *In re Tex. Dep't of Family & Protective Servs.*, 415 S.W.3d 522, 529 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding)). "Thus, a trial court may, under its inherent power, sanction a party who makes a false statement of material fact to the court." *Id.* (citing *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 448 (Tex. App.—Austin 2004, pet. denied)). "In addition, a court may also use its inherent power to impose sanctions for conduct, that if tolerated, 'breeds disrespect for and threatens the integrity of our judicial system.'" *Darnell v. Broberg*, 565 S.W.3d 450, 460 (Tex. App.—El Paso 2018, no pet.) (quoting *Westview Drive Invs., LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583, 614 (Tex. App.—Houston [14th Dist.] 2017, pet. denied)).

**DISCUSSION**

**Awarding monetary sanctions to a private litigant**

In his first issue, Paul asserts that the district court was prohibited from ordering him to pay "contempt-based" monetary sanctions to a private litigant. As support for this argument, Paul relies on the well-established rule that a contempt fine must be payable to a sovereign, not to a private litigant. *See Cannan v. Green Oaks Apts., Ltd.*, 758 S.W.2d 753, 755 (Tex. 1988) (per curiam) ("[I]n a contempt proceeding a private party cannot recover damages for a violation of a court order."); *Khan v. Valliani*, 439 S.W.3d 528, 536 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("If a fine is assessed in a civil contempt order, the court cannot order it to be paid to a private litigant.").

Paul failed to raise this complaint at any point in the court below. Accordingly, Paul failed to preserve error, if any, in the award of sanctions to Mitte as a private litigant. *See* Tex. R. App. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion . . . ."). Additionally, even if Paul had preserved error, this appeal involves a sanctions award, not a contempt fine. Although both the district court's contempt order and its sanctions order addressed the same conduct by Paul, contempt and sanctions are procedurally distinct remedies. *See Onstad v. Wright*, 54 S.W.3d 799, 804 (Tex. App.—Texarkana 2001, pet. denied). A contempt fine is not paid to a private litigant because the purpose of the fine is either to coerce compliance with a court order or to punish past disobedience of a court order. *See Cadle Co. v. Loebinger*, 50 S.W.3d 662, 669 (Tex. App.—Fort Worth 2001, pet. denied). Monetary sanctions, on the other hand, can be paid to a private litigant to compensate the litigant for the expenses incurred in responding to the opposing party's sanctionable conduct or to deter the

11

opposing party from engaging in future sanctionable conduct. *See Howell*, 143 S.W.3d at 446-47; *Onstad*, 54 S.W.3d at 804-05; *see also* Tex. Civ. Prac. & Rem. Code 10.004(c)(2), (3) (providing that sanctions for filing frivolous pleading or motion can include "an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees"); *Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 823 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("Sanctions may be imposed for a variety of reasons and their function can be compensatory, punitive or deterrent in nature."); *see generally Jetall Companies, Inc. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778, at *6-7 (Tex. App.—Houston [1st Dist.] Nov. 3, 2020, no pet.) (mem. op.) (rejecting appellant's contention that sanctions "that are double the amounts awarded for attorney's fees" were excessive "[i]n light of the evidence of appellant's history of litigation against opposing counsel and the broad discretion provided to the trial court" in determining sanctions amount sufficient to deter future misconduct); *ABN Amro Mortg. Group, Inc. v. Rabalais*, No. 13-06-00598-CV, 2008 WL 5248880, at *8 (Tex. App.—Corpus Christi–Edinburg Dec. 18, 2008, no pet.) (mem. op.) (concluding that discovery sanction in amount of $100,000, which was "roughly double the amount of attorney's fees which were incurred and paid as a result of the discovery problems," was not excessive "[b]ased on the course of litigation, which indicated a general and continuing pattern of discovery abuse, a lengthy delay, and attorney's fees incurred by the [appellees] in pursuing the discovery at issue, which was firmly supported by the record").

We overrule Paul's first issue.

**Writ of injunction**

The Rules of Civil Procedure require that after a trial court issues an injunction, the clerk must prepare and issue a "writ of injunction," the sheriff must serve the writ on the enjoined party, and the sheriff must file the return in accordance with the requirements of Rule 107. *See* Tex. R. Civ. P. 687, 688, 689. The record does not reflect that Paul was served with a writ of injunction in accordance with the above rules. In his second issue, Paul asserts that because he was not served with a writ of injunction, the order sanctioning him for violating the injunction should be reversed.

Although the above procedural requirements for a writ of injunction are mandatory, *In re Guardianship of Chang*, 635 S.W.3d 444, 448 (Tex. App.—Houston [14th Dist.] 2021, pet. denied), the failure to comply with them can be harmless, provided that the record reflects that the enjoined party had notice of the injunction and its requirements, *see Ex parte Young*, 129 S.W. 599, 600 (Tex. 1910); *American Med. Home Health Servs., LLC v. Legacy Home Health Agency, Inc.*, No. 04-20-00494-CV, 2022 WL 946521, at *8-9 (Tex. App.—San Antonio Mar. 30, 2022, pet. denied) (mem. op.). Here, the record reflects that Paul was served with Mitte's application for temporary restraining order, motion for post-judgment injunction, and other pleadings relating to the injunction; that Paul filed responsive pleadings and appeared at and participated in the hearing on Mitte's motion for post-judgment injunction; that Paul was served with both the temporary restraining order and the post-judgment injunction when they were issued; and that Paul filed an interlocutory appeal from the post-judgment injunction. We conclude that Paul had notice of the injunction and its requirements and thus was not harmed by the failure to issue a writ of injunction in this case. *See American Med. Home Health Servs., LLC*, 2022 WL 946521, at *9 (concluding that "the purpose of the requirements in

13

[Rules] 687–689 were achieved" when appellants, represented by counsel, filed answers and participated in injunction hearing before entry of injunctive relief and were electronically served with required documents); *see also Pacheco v. Allala*, 261 S.W. 148, 149 (Tex. App.—San Antonio 1924, no writ) (concluding that similar procedural violations were "immaterial" and did not "affect the validity of the injunction, of the issuance of which the defendants seem to have been apprised in some efficient way"; concluding that it was "sufficient that [the defendants] received notice" of injunction).

We overrule Paul's second issue.

## Segregation of attorney's fees

In his third issue, Paul asserts that the sanctions order should be reversed because Mitte did not segregate its attorney's fees between the fees incurred to prosecute the contempt motion and the fees incurred to prosecute the sanctions motion. Building on the argument that he made in his first issue, Paul argues that the attorney's fees incurred by Mitte to prosecute the contempt motion were not recoverable because they could not be paid to a private litigant and thus had to be segregated from the attorney's fees to prosecute the sanctions motion.

Paul failed to make any such argument in the court below. Accordingly, the error, if any, has not been preserved for our review. *See* Tex. R. App. P. 33.1(a)(1); *Green Int'l., Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("[I]f no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived."); *McCalla v. Ski River Dev., Inc.*, 239 S.W.3d 374, 383 (Tex. App.—Waco 2007, no pet.) ("[T]he opposing party must properly preserve for appellate review a contention that the fee claimant failed to segregate the fees sought."). Additionally, even if Paul had preserved error, the requirement of segregation

14

applies when a fee claimant prevails on multiple claims, i.e., causes of action, and attorney's fees are recoverable by statute for some claims but not for others. *See, e.g.*, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) (concluding that prevailing party had to segregate fees for fraud, contract, and DTPA claims). That is not what occurred here. The district court's sanctions order did not award attorney's fees to Mitte for prevailing on its underlying legal claims against Paul. Rather, the district court found that Paul had engaged in sanctionable conduct post-judgment and, as part of its sanctions order, awarded Mitte the attorney's fees that it had incurred because of Paul's sanctionable conduct. Thus, the requirement of fee segregation is inapplicable here.

We overrule Paul's third issue.

**Due process**

In Paul's fourth issue, he argues that his due-process rights were violated by the sanctions order. Specifically, he asserts that "the sanctions request was mooted prior to the first hearing when the Enjoined Parties filed the monthly reports and because Mitte provided no notice to Mr. Paul that sanctions would be at issue at the November 17, 2022 hearing, let alone the basis for such sanctions." Paul further argues that because this Court concluded in the earlier habeas-corpus proceeding that Paul was not provided with sufficient notice for him to be held in criminal contempt for the $963,323.18 transfer, *see In re Paul*, No. 03-23-00160-CV, 2023 WL 2718454, at *7 (Tex. App.—Austin Mar. 31, 2023, orig. proceeding) (mem. op.), "this Court must, at a minimum, vacate the Order Granting Sanctions and remand this proceeding to the trial court to reduce or eliminate the sanctions award due to the lack of notice."

15

Paul's arguments rely on his contention that "the same notice requirements apply to both sanctions and contempt orders." They do not. As this Court explained in the habeas-corpus proceeding, "[t]he notice required in cases of constructive criminal contempt 'should be by show cause order or equivalent legal process personally served on the alleged contemnor, and it should state when, how and by what means the defendant has been guilty of contempt.'" *Id.* (quoting *Ex parte Vetterick*, 744 S.W.2d 598, 599 (Tex. 1988)). In contrast, for a trial court to impose sanctions on a party, "[a]ll due process requires is notice of the trial court's intent to consider imposing sanctions and an opportunity to be heard." *Clark v. Bres*, 217 S.W.3d 501, 514 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see In re Bennett*, 960 S.W.3d at 40 (concluding that due process was satisfied when sanctioned parties "were given notice of the court's intention to consider sanctions and were given an opportunity to respond").

Here, Paul was given notice that Mitte was seeking sanctions against him when he was served with Mitte's motion for sanctions on July 8, 2022. Mitte's motion identified the basis for the requested sanctions, specifically Paul's failure to "file on July 1, 2022 (or at any other time) a sworn report to the Court listing each transfer, conveyance, or dissipation of assets in excess of $25,000 made over the course of the prior month, or a report that no such transfers or conveyances were made, as required by the [post-judgment injunction] order." A copy of the injunction was attached to Mitte's motion. In an email to the parties dated September 30, 2022, the district court notified counsel that it was "granting a hearing on Plaintiff's Motion for Contempt and Motion for Sanctions." The court added that the hearing would likely be "in-person" and requested that the parties agree on a date for the hearing. On October 3, Paul's counsel sent an email to the court agreeing to a date of November 9, and on October 4, the court sent an email to Paul confirming the date and time for the hearing. At the beginning of the

16

November 9 hearing, the court announced that both the motion for contempt and motion for sanctions would be considered at that time.  Paul appeared at the hearing represented by counsel and was provided an opportunity to be heard, including through his testimony.  The same is true for the November 17 hearing, which the court announced during the November 9 hearing, providing Paul with over a week to prepare for it.  We conclude that these procedures satisfied the requirements of due process and provided Paul with sufficient notice and an opportunity to be heard on the sanctions motion.

Paul's arguments to the contrary are unavailing.  He claims that his filing of the reports prior to the November 9 hearing "mooted" the sanctions hearing.  However, the district court had ordered the reports to be filed on the first day of each month.  Thus, even when Paul filed the reports, Paul could still be subject to sanctions for failing to timely file them.  Additionally, at the November 9 hearing, the district court heard evidence suggesting that at least one of the reports (and Paul's testimony relating to that report) was false, which provided another possible basis for sanctioning Paul.  However, rather than sanctioning Paul at that time, the district court recessed the proceedings and provided Paul with an additional opportunity to present evidence at the November 17 hearing.

Paul further claims that he did not have notice "that sanctions would be at issue at the November 17, 2022 hearing" or of "the basis for such sanctions," but this claim is belied by the facts that on the day of that hearing, Paul's counsel filed a response to the motion for sanctions and argued at the hearing that "sanctions are inappropriate for the reasons stated in our response that was filed."  We also observe that when the court announced at the conclusion of the November 17 hearing that it was "seriously considering both contempt and sanctions," Paul's counsel made no complaint regarding any lack of notice regarding the court's consideration of

17

sanctions, and he also made no such complaint in his post-submission response to Mitte's post-submission reply in support of both its motion for contempt and its motion for sanctions.

Finally, we reject Paul's contention that we must vacate the sanctions order and remand this proceeding to the district court to reduce or eliminate the sanctions award following this Court's holding in *In re Paul* regarding the $963,323.18 transfer. As we discussed above, the strict and specific notice requirements regarding criminal contempt do not apply to sanctions. For the purpose of imposing sanctions, the district court provided Paul with sufficient notice regarding the $963,323.18 transfer. At the November 9 hearing, the district court ordered Paul to provide Mitte with all of Paul's personal bank statements from June onward, in part so that a determination could be made "whether the reports are incorrect in stating that there [has] been no transfer, conveyance, or dissipation of assets . . . in excess of $25,000 . . . for less than fair value." Thus, one week before the November 17 hearing, the court had informed Paul that it would be reviewing his financial records more carefully at that hearing, which provided Paul with notice that other transfers that he had made could be subject to court scrutiny at that time. Then, at the November 17 hearing, Mitte brought the $963,323.18 transfer to the court's attention, and the court provided Paul with an opportunity to address it, both at the hearing and in post-submission briefing that Paul filed. We conclude that the district court did not violate Paul's due-process rights in considering the $963,323.18 transfer in its sanctions order.

We overrule Paul's fourth issue.

## CONCLUSION

We affirm the district court's sanctions order.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Ellis

Affirmed

Filed:   March 13, 2025